**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE**

| | | |
|---|---|---|
| CHINA CORNICI CO., LTD. *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Court No. 23-00217 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Upon consideration of plaintiffs' Rule's 56.2 motion for judgment upon the agency record, the response thereto, and all other pertinent papers, it is hereby:

ORDERED that plaintiffs' motion is DENIED; and it is further

ORDERED that judgment shall issue for the United States.


Dated: _____, 2024                    _____
        New York, New York                          STEPHEN A. VADEN, JUDGE

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE**

| | | |
|---|---|---|
| CHINA CORNICI CO., LTD. *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Court No. 23-00217 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTFFS' <br> <u>MOTION FOR JUDGMENT UPON THE AGENCY RECORD</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:
SHANNI ALON                                    KATY M. BARTELMA
Attorney                                       Trial Attorney
Office of the Chief                            U.S. Department of Justice
Counsel for Trade Enforcement                  Civil Division
& Compliance                                   Commercial Litigation Branch
U.S. Department of Commerce                     PO Box 480, Ben Franklin Station
                                               Washington, DC 20044

July 30, 2024                                  Attorneys for Defendant

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

STATEMENT PURSUANT TO RULE 56.2 ...................................................................... 1

    I. The Administrative Determination Under Review............................................... 1

    II.  The Issues Presented for Review ................................................................... 2

STATEMENT OF FACTS .............................................................................................. 2

SUMMARY OF THE ARGUMENT ................................................................................ 7

ARGUMENT ................................................................................................................. 8

    I.       Standard of Review............................................................................... 8

    II.     Commerce's Decision Finding Chen Chui Ineligible For A Separate Rate Is Supported By Substantial Evidence And In Accordance With Law ..................... 9

        A.  Legal Framework ........................................................................... 9

        B.  Commerce Properly Concluded Chen Chui Was Not Eligible For A Separate Rate ........................................................................................... 10

    III.    Commerce's Determination To Rescind The Review With Respect To China Cornici And To Deny Its Separate Rate Application Is In Accordance with Law 13

        A.  Plaintiffs Failed To Exhaust And Waived Their Theory That Commerce Lacked Statutory Authority To Rescind The Administrative Review With Respect To China Cornici ............................................................... 13

        B.  Commerce Possessed Authority To Rescind The Review With Respect To China Cornici In The Absence Of A Suspended Entry ................................. 15

            1.  Legal Framework ................................................................... 15

            2.  Commerce's Recission Determination Is In Accord With Law ......... 18

        C.  Commerce's Rescission Determination Is Supported By Substantial Evidence ................................................................................................. 23

        D.  Any Dispute With Customs Concerning An Importer's Misclassification Of Entries Does Not Extinguish Commerce's Statutory Deadline ..................... 25

CONCLUSION.................................................................................................................... 27

CERTIFICATE OF COMPLIANCE........................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Ludlum v. United States*,
   346 F.3d 1368 (Fed. Cir. 2003) ........................................................................... 20

*Aristocraft of Am., LLC v. United States*,
   331 F. Supp. 3d 1372 (Ct. Int'l Trade 2018) ....................................................... 23

*Canadian Solar Int'l Ltd. v. United States*,
   68 F.4th 1267 (Fed. Cir. 2023) ........................................................... 9, 15, 16, 20

*China Mfrs. All., LLC. v. United States*,
   357 F. Supp. 3d 1364 (Ct. Int'l Trade 2019) ....................................................... 12

*Cleo Inc. v. United States*,
   501 F.3d 1291 (Fed. Cir. 2007) ............................................................................. 9

*Conley v. Gibson*,
   355 U.S. 41 (1957) .............................................................................................. 13

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) .............................................................................................. 9

*Fujitsu Gen.* Ltd. *v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) ........................................................................... 8, 9

*Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*,
   28 F. Supp. 3d 1317, 1324, 1329 (Ct. Int'l Trade 2014) ................................ 10, 11

*Kimble v. United States*,
   991 F.3d 1238 (Fed. Cir. 2021) ..................................................................... 13, 14

*PAM, S.p.A. v. United States*,
   582 F.3d 1336 (Fed. Cir. 2009) ............................................................... 8, 11, 24

*Qingdao Sea-Line Trading Co.*, Ltd. *v. United States*,
   766 F.3d 1378 (Fed. Cir. 2014) ..................................................................... 14, 15

*QVD Food Co. v. United States*,
   658 F.3d 1318 (Fed. Cir. 2011) ..................................................................... 23, 26

*Shanghai Sunbeauty Trading Co.*, Ltd. *v. United States*,
   380 F. Supp. 3d 1328 (Ct. Int'l Trade 2019) ....................................... 17, 21, 22, 24

*Sigma Corp. v. United States*,
   117 F.3d 1401 (Fed. Cir. 1997) ........................................................... 9, 10, 12, 17

*U.S. Steel Corp. v. United States*,
   348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018) ....................................................... 14

*United States v. Eurodif S.A.*,
  555 U.S. 305 (2009) ................................................................................................ 8

**Statutes**

19 U.S.C. § 1484 ...................................................................................................... 15

19 U.S.C. § 1514 ...................................................................................................... 15

19 U.S.C. § 1673 ...................................................................................................... 15

19 U.S.C. § 1673b .................................................................................................... 15

19 U.S.C. § 1673d .................................................................................................... 15

19 U.S.C. § 1675 ........................................................ 9, 12, 15, 16, 18, 19, 21, 22, 25

19 U.S.C. § 1677 ................................................................................................ 9, 19

28 U.S.C. § 1581 ...................................................................................................... 13

28 U.S.C. § 2637 ...................................................................................................... 14

**Regulations**

19 C.F.R. § 159.1 ..................................................................................................... 15

19 C.F.R. § 351.212 ...................................................................................... 15, 16, 19

19 C.F.R. § 351.213 .......................................................................... 5, 7, 9, 15, 16, 18, 20, 21

**Rules**

Rule 8 ................................................................................................................. 13, 14

Rule 56.2 ................................................................................................................... 1

**Federal Register**

*Separate-Rates Practice in Antidumping Proceedings Involving Non-Market Economy Countries,* 69 Fed. Reg. 77,722 (Dep't of Commerce Dec. 28, 2004) ................................. 10, 17

*Certain Tissue Paper Products from the People's Republic of China: Final Results and Final Rescission, In Part, of Antidumping Duty Administrative Review,* 73 Fed. Reg. 58,113 (Dep't of Commerce Oct. 6, 2008) ..................................................................................................... 17

*Solid Fertilizer Grade Ammonium Nitrate from the Russian Federation: Notice of Rescission of Antidumping Duty Administrative Review,* 77 Fed. Reg. 65,532 (Dep't of Commerce Oct. 29, 2012) ........................................................................................................................ 17

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019,* 86 Fed. Reg. 36,102 (Dep't of Commerce July 8, 2021) .......................................................... 22

*Aluminum Wire and Cable from the People's Republic of China: Rescission of Countervailing Duty Administrative Review; 2019,* 86 Fed. Reg. 36,522 (Dep't of Commerce July 12, 2021) .. 16

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation: Opportunity to Request Administrative Review,* 87 Fed. Reg. 7,112 (Dep't of Commerce Feb. 8, 2022) ......... 2

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 87 Fed. Reg. 21,619 (Dep't of Commerce Apr. 12, 2022) .................................................................... 2, 10, 17

*Wood Mouldings and Millwork Products from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2020-2022,* 88 Fed. Reg. 14,139 (Dep't of Commerce Mar. 7, 2023) ........................................................................................................ 3

*Wood Mouldings and Millwork Products from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2020-2022*, 88 Fed. Reg. 62,539 (Dep't of Commerce Sept. 12, 2023) ..................................................................................................................... 1, 4

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Court's Rules, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiffs China Cornici Co., Ltd. (China Cornici) and RaoPing HongRong Handicrafts Co., Ltd. (d.b.a. Chen Chui Global Corp.) (RaoPing) (collectively, plaintiffs), ECF No. 21.

Plaintiffs challenge certain aspects of the final results of the U.S. Department of Commerce's (Commerce) administrative review of the antidumping duty order covering wood mouldings and millwork products from the People's Republic of China (China).  Specifically, RaoPing challenges Commerce's determination that Chen Chui Global Corp. (Chen Chui), RaoPing's trading company, is not eligible to receive a separate rate.  China Cornici challenges Commerce's recission of the review with respect to China Cornici and denial of its separate rate application.  As explained below, plaintiffs' contentions lack merit and, contrary to their assertions, Commerce's determinations are supported by substantial evidence and otherwise in accordance with law.  Accordingly, the final results should be sustained.

## STATEMENT PURSUANT TO RULE 56.2

I.  The Administrative Determination Under Review

Plaintiffs challenge *Wood Mouldings and Millwork Products from the People's Republic of China*, 88 Fed. Reg. 62,539 (Dep't of Commerce Sept. 12, 2023) (*Final Results*), Appx16427-16430, and the accompanying Issues and Decision Memorandum (IDM), Appx13804-13849. The period of review is August 12, 2020 through January 31, 2022.

II.    <u>The Issues Presented for Review</u>

1.    Whether Commerce's denial of RaoPing's request to find its trading company, Chen Chui, eligible for the same separate rate is supported by substantial evidence and in accordance with law.

2.    Whether Commerce's recission of the administrative review with respect to China Cornici and denial of its separate rate is supported by substantial evidence and in accordance with law.

**STATEMENT OF FACTS**

In February 2022, Commerce published a notice of opportunity to request an administrative review of the antidumping order on wood mouldings and millwork products from China.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation: Opportunity to Request Administrative Review*, 87 Fed. Reg. 7,112 (Dep't of Commerce Feb. 8, 2022).  China Cornici and RaoPing requested that Commerce conduct an administrative review covering the period of August 12, 2020 through January 31, 2022, for "RaoPing HongRong Handicrafts Co., Ltd. (d.b.a. Chen Chui Global Corp.)" and "China Cornici Co. Ltd."  *See* Appx1006-1007.  In April 2022, Commerce initiated the administrative review.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 21,619 (Dep't of Commerce Apr. 12, 2022), Appx.1110, 1125-1126.  China Cornici and RaoPing filed an entry of appearance and an administrative protective order application.  *See* Appx1131, Appx1132-1134.

<u>RaoPing</u>

In May 2022, RaoPing submitted its separate rate application, giving its name as "RaoPing HongRong Handicrafts, Co., Ltd." and stating that it is not identified by any other names.  RaoPing Separate Rate Application, Appx85220-85221; *see* Appx85213-85291.  The application states that "an exporter cannot obtain a separate rate without providing Commerce

the relevant U.S. Customs 7501 Entry Summary for a suspended entry, unless other evidence of a suspended entry exists on the record."  Appx85223.  In response to this requirement, RaoPing provided an entry summary, but it was not for a Type 3[1] entry (*i.e.* for merchandise subject to countervailing or antidumping duties), and therefore was not for a suspended entry, as the application required.  *See* Appx85223, Appx85269.  Commerce issued a supplemental questionnaire, reiterating the requirement to submit an entry summary for a suspended (*i.e.* Type 3) entry during the period of review and requiring RaoPing to explain why the documentation it submitted did not relate to a Type 3 entry, to submit evidence of a Type 3 entry, and to revise its application accordingly.  Supp. Questionnaire, Appx4064-4067.

In August 2022, RaoPing responded that, at the time of the entry at issue, it was not aware of the U.S. antidumping duty order and as such, the entry was initially made as a Type 1 entry (*i.e.*, non-subject merchandise).  RaoPing Response to Supp. Questionnaire, Appx88601.  Additionally, RaoPing provided documentation for a Type 3 entry that was made during the period of review and amended its separate rate application.  Appx88601.

In March 2023, Commerce published the preliminary results, making a preliminary listing of RaoPing as a non-selected company under review receiving a separate rate.  *See Wood Mouldings and Millwork Products from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review*, 88 Fed. Reg. 14,139 (Dep't of Commerce Mar. 7, 2023), Appx 13300-13304.

---

[1] The Entry Type Code refers to the type of entry summary being filed.  Type 03 indicates that the entry is a consumption entry subject to antidumping and/or countervailing duties.  Type 01 indicates that the entry is a consumption entry not subject to antidumping and/or countervailing duties.  Customs Form 7501 Entry Summary at 4, available at: https://www.cbp.gov/sites/default/files/assets/documents/2023-Nov/CBP%20Form%207501.pdf (last accessed on July 15, 2024).

Ahead of Commerce's final decision, RaoPing submitted a letter in lieu of a case brief requesting that Commerce clarify in the final results that RaoPing's exports of subject merchandise to the United States through its Taiwanese trading company Chen Chui are specifically entitled to a separate rate. RaoPing Letter in Lieu of Case Brief (July 17, 2023), Appx103098. It argued this would be appropriate because the shipping documentation submitted in RaoPing's separate rate application shows that imports from RaoPing are made through Chen Chui. *See* Appx103098-103099.

On September 12, 2023, Commerce published its final results. *Final Results*, 88 Fed. Reg. 62,539, Appx16427-16430, and accompanying IDM, Appx13804-13849. In the final results, Commerce found RaoPing eligible for a separate rate but Chen Chui not eligible for a separate rate because Chen Chui was not under review and did not submit a separate rate application. *See* Appx16430, Appx13839. Commerce reasoned there was no basis to conclude that Chen Chui was a trade name for RaoPing when RaoPing had answered "no" when asked in its rate application if it was identified by any other names and RaoPing's business license did not include Chen Chui as a trade name. *See* Appx13839. Rather, Chen Chui was a trading company RaoPing uses and a separate entity. *See* Appx13839. Because no party had requested a review of Chen Chui, it was not subject to the review and was therefore not eligible for consideration for a separate rate in the review. *See* Appx13839-13840.

<u>China Cornici</u>

In May 2022, China Cornici submitted a separate rate application. *See* China Cornici Separate Rate Application, Appx84456-84669. In response to the requirement that the exporter provide a Customs entry summary for a suspended entry, China Cornici provided an entry summary, but it was not for a Type 3 entry (*i.e.* for merchandise subject to countervailing or

antidumping duties), and therefore was not for a suspended entry, as the application required. *See* Appx84466, Appx84484; *see also* IDM, Appx13842.  Commerce sent China Cornici a supplemental questionnaire, reiterating the requirement that it submit an entry summary for a Type 3 entry during the period of review and requiring China Cornici to explain why the documentation it submitted did not relate to a Type 3 entry, to submit evidence of a Type 3 entry, and to revise its application accordingly.  Supp. Questionnaire, Appx4052-4053.

In August 2022, China Cornici responded that, at the time of the subject entry, it was not aware the antidumping duty order covered the product and, so, the entry was initially made as a Type 1 entry (*i.e.*, non-subject merchandise).  China Cornici Resp. to Supp. Questionnaire, Appx88582.  China Cornici acknowledged the entry was made as a Type 1 entry but stated that its importer had filed a prior disclosure with U.S. Customs and Border Protection (CBP or Customs) and requested that CBP reset the entries to Type 3 and suspend them.  Appx88582; *see* Appx88585-88588.  China Cornici did not submit any other entry summary.

In September 2022, Commerce placed entry information on the record that demonstrated that the entry for which China Cornici had provided a Customs entry form was not a reviewable entry of subject merchandise during the period of review.  IDM at 40, Appx13843 (citing Memorandum, "Entry Information for Wood Mouldings and Millwork Products from The People's Republic of China," (Sept. 13, 2022), Appx89560-89564).

In the March 2023 preliminary results, Commerce made a preliminary determination that China Cornici had no suspended entries of subject merchandise during the period of review, stating that "{a}bsent any evidence of a reviewable entry, pursuant to 19 C.F.R. § 351.213(d)(3), we intend to rescind the administrative review of this company in the final results of review." *Preliminary Results*, Appx13301, and accompanying PDM, Appx10370.

In July 2023, China Cornici submitted a letter in lieu of a case brief. *See* Appx103103-103108. It argued that Commerce should not rescind the review or deny it a separate rate because the record evidence indicated that it had shipped subject merchandise during the period of review and that its importer paid antidumping duties but CBP had failed to reset the entries to Type 03. *See* Appx13606, Appx103104.

In the final results, Commerce continued to find that China Cornici did not have a reviewable entry of subject merchandise during the period of review. Appx16428; *see* Appx13842-13843. Commerce first reiterated that the separate rate application requires a company to provide an entry summary for a suspended entry, unless other evidence of a suspended entry exists on the record. Appx13842. Commerce then explained that China Cornici had not demonstrated a suspended entry because it did not provide an entry summary for a Type 3 entry with its application or in its response to the supplemental questionnaire. Appx13842-13843. Commerce acknowledged that China Cornici had said it was unaware of the antidumping order at the time of its entry and was not at fault for CBP not resetting the entry in time for the review, but Commerce determined it is the importer's responsibility to accurately declare merchandise as subject to antidumping duties at the time of entry. *See* Appx13843. Commerce also had placed evidence on the record demonstrating that the entry for which China Cornici had provided documentation was not a reviewable entry of subject merchandise. *See* Appx13843. Thus, in the absence of record evidence of a reviewable entry, Commerce rescinded the review with respect to China Cornici. Appx13843.

On October 24, 2023, plaintiffs timely filed a complaint in this Court. *See generally* Compl. (ECF No. 9).

## SUMMARY OF THE ARGUMENT

Commerce's rejection of RaoPing's request to clarify that Chen Chui is eligible for the same separate rate as RaoPing is supported by substantial evidence and in accordance with the law. Commerce employs a rebuttable presumption that all companies within a non-market economy, like China, are subject to government control and should be assigned a single, country-wide antidumping rate unless a company participating in a review rebuts this presumption and shows it is eligible for a separate rate by demonstrating that it maintains both *de jure* and *de facto* independence from the government. Here, Commerce's determination that Chen Chui, a separate trading company, is ineligible for a separate rate is supported by substantial evidence showing that Chen Chui is a separate entity from RaoPing, not under review, and did not file a separate rate application to demonstrate its eligibility for a separate rate.

Commerce's determination to rescind the administrative review with respect to China Cornici and deny it a separate rate is also supported by substantial evidence and in accordance with law. Although plaintiffs contend that Commerce lacked authority to rescind the review with respect to China Cornici, plaintiffs have waived and failed to exhaust this argument by failing to assert it in their complaint and before the agency. Even if this were not the case, Commerce's rescission determination was in accordance with the law. By law, an administrative review is a retrospective process by which Commerce determines the appropriate antidumping duty rate to apply to entries of subject merchandise for a discrete period of time. For Commerce to conduct that retrospective review, there must be evidence of entries during the period of review and the entries must be suspended so that Commerce may direct Customs to liquidate those entries at the rate determined by Commerce in the review. Therefore, absent evidence of a suspended entry of subject merchandise during the period of review, Commerce will rescind the

7

review with respect to the company pursuant to 19 C.F.R. § 351.213(d)(3).  Thus, Commerce's decision to rescind the review with respect to China Cornici is lawful.

Commerce's rescission decision is also supported by substantial evidence.  The documents provided by China Cornici did not include the requested Customs form for a suspended Type 3 entry or evidence of another suspended entry during the period of review, while Commerce placed evidence on the record that demonstrated the entry for which China Cornici did provide a Customs form was not a reviewable entry.  Although China Cornici contends that Commerce should have reached a different conclusion or refrained from completing the review to provide China Cornici's importer with more time to resolve its classification errors, Commerce analyzed the available information and complied with its statutory obligation to timely complete the review.  Thus, substantial evidence supports Commerce's determination that no record evidence established a reviewable entry for China Cornici.  Accordingly, the Court should sustain Commerce's determination.

## **ARGUMENT**

### I.  Standard Of Review

In reviewing Commerce's antidumping or countervailing duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'"  *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) ("The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence.") (citation omitted)).  "Substantial evidence" means "'more than a mere scintilla,' or 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *PAM, S.p.A. v. United States*, 582 F.3d

1336, 1339 (Fed. Cir. 2009) (quoting *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938))).  The possibility of drawing two inconsistent conclusions from the evidence in the record does not prevent an agency's determination from being supported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  An agency decision may not be overturned "simply because the reviewing court would have reached a different conclusion based on the same record."  *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted); *see also Fujitsu*, 88 F.3d at 1039 ("Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts.").

II.  **Commerce's Decision Finding Chen Chui Ineligible For A Separate Rate Is Supported By Substantial Evidence And In Accordance With Law**

Commerce's determination that RaoPing's trading company, Chen Chui, is not eligible for RaoPing's separate rate is supported by substantial evidence and in accordance with law.  Although plaintiffs contend that Commerce failed to account for RaoPing's preferred evidence, Commerce's finding that Chen Chui is a separate entity that was not under review and therefore ineligible for a separate rate is supported by substantial evidence.

A.  Legal Framework

Interested parties may annually request review of an antidumping order for a given retrospective period; this process is known as an administrative review.  *See* 19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.213(e)(1)); *Canadian Solar Int'l Ltd. v. United States*, 68 F.4th 1267, 1270 (Fed. Cir. 2023).  In antidumping proceedings involving non-market economy countries, such as China, Commerce presumes that all companies within the country are subject to government control and should be assigned a single, country-wide antidumping duty rate

unless a company can rebut that presumption by demonstrating its export activities are independent from government control both in law (*de jure*) and in fact (*de facto*). *See Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997); *see also* 19 U.S.C. § 1677(18) (defining "nonmarket economy country"); *Separate-Rates Practice in Antidumping Proceedings Involving Non-Market Economy Countries*, 69 Fed. Reg. 77,722 (Dep't of Commerce Dec. 28, 2004).  The Federal Circuit has recognized Commerce's "broad authority to interpret the antidumping statute and devise procedures to carry out the statutory mandate," including by applying this presumption and placing the burden on exporters to demonstrate the absence of government control.  *See Sigma*, 117 F.3d at 1405.  To be considered for a separate, company-specific rate, a company must submit a separate rate application and substantiate its eligibility for such a rate.  *See, e.g., Initiation Notice*, 87 Fed. Reg. at 21,620 (requiring separate-rate applications from firms that do not currently have a separate rate but wish to qualify for separate rate status in administrative reviews involving {nonmarket economy} countries); *see also Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 28 F. Supp. 3d 1317, 1324,  1329 (Ct. Int'l Trade 2014) (recognizing Commerce's "broad discretion to set the procedures it needs in order to adequately perform and enforce its regulatory role," including when setting prerequisites to separate-rate eligibility).

  B. <u>Commerce Properly Concluded Chen Chui Was Not Eligible For A Separate Rate</u>

  In its final results, Commerce concluded that RaoPing was eligible for a separate rate but that Chen Chui, a trading company it utilized, was not eligible for a separate rate because the information provided by RaoPing in connection with its own rate application showed Chen Chui was a separate entity from RaoPing.  *See* IDM, Appx13839.  Plaintiffs contend that, in reaching its decision, Commerce "failed to adequately account for the overwhelming evidence that fairly detracted from" its conclusion.  Pl. Mot. at 5.  They are incorrect.

10

The record reflects that Commerce considered all of the evidence and that its determination that Chen Chui was not eligible for a separate rate is supported by substantial evidence. As explained in the issues and decision memorandum, Chen Chui was not eligible for a separate rate in light of record evidence that it was a separate entity from RaoPing. *See* IDM, Appx13839. In particular, on its separate rate application, RaoPing answered "no" when asked if it is "identified by any other names, such as trade names or 'doing business-as' ('d.b.a.') names, as a legal matter in the home market, in third countries, or in the United States?"[2] RaoPing Rate Application, Appx85221. In response to the question of whether it was "requesting separate status for any of the trade names," RaoPing answered, "Not applicable since RaoPing HongRong is not identified by any other trade names." *See* Appx85211. Additionally, RaoPing's business license did not include Chen Chui as a trade name, s*ee* Appx85278, and, in its letter in lieu of case brief, RaoPing described Chen Chui as its Taiwanese trading company, *see* Appx103098-103099. Finally, because no interested party had requested review of Chen Chui, it was not subject to the review and thus is not eligible for a separate rate in the review. *See* IDM, Appx13840. Thus, there is ample evidence in the record to support Commerce's conclusion that Chen Chui is a separate entity from RaoPing and not a trade name, and that Chen Chui is not entitled to a separate rate in this administrative review when it had not been subject to review or submitted a rate application. *See PAM, S.p.A.*, 582 F.3d at 1339 ("Substantial evidence" means "more than a mere scintilla{.}").

Plaintiffs do not dispute these basic facts, *see, e.g.*, Pl. Mot. at 6 (acknowledging RaoPing did not list in its application that it was doing business as Chen Chui), but they nevertheless

---

[2] The application defines trade names as, "other names under which the firm does business. It does not include product brand names or the names of any other entities in the firm's 'group,' affiliated or otherwise." Appx85221.

attempt to undermine Commerce's supported conclusion by pointing out evidence they claim "demonstrated that Chen Chui is a vital link in RaoPing's supply chain" and "acting as a trading company for RaoPing, made the sale of subject merchandise to a U.S. purchaser," *id*. But Commerce considered this information, *see* IDM, Appx13838-13838, and found there was no basis to conclude that Chen Chui was a trade name for RaoPing and that RaoPing had conceded that Chen Chui is a trading company that it is uses, see Appx13839. And, even if such documentation does, as plaintiffs claim, show Chen Chui was "effectively doing business with U.S. purchasers on behalf of RaoPing," *id*. at 7, that does not undermine Commerce's conclusion that RaoPing was a separate entity from RaoPing.

Moreover, for Chen Chui to be eligible for a separate rate, Chen Chui must be under review. *See, e.g., China Mfrs. All., LLC. v. United States*, 357 F. Supp. 3d 1364, 1386 (Ct. Int'l Trade 2019) (describing "separate-rate respondents" as "respondents that were under review by Commerce but were not individually examined"). However, no party requested review of Chen Chui, and plaintiffs cite no authority to support their apparent view that, because an exporter is eligible for a separate rate, a separate trading company is likewise entitled to that rate without timely requesting a review, participating in the review, or submitting a separate rate application. To the extent that RaoPing alleges that it will be harmed by Commerce's failure to "clarify" that entries made through Chen Chui are entitled to a separate rate, Pl. Mot. at 7-8, any such harm is merely the consequence of the normal operation of the administrative review process and the well-established principle that an applicant must demonstrate their entitlement to a separate rate, *see* 19 U.S.C. § 1675; *Sigma*, 117 F.3d at 1405, not any error by Commerce.

III.    Commerce's Determination To Rescind The Review With Respect To China Cornici And To Deny Its Separate Rate Application Is In Accordance with Law

Based on the record before it, Commerce rescinded the review of China Cornici because it did not demonstrate that it had a suspended entry of subject merchandise during the period of review.  *See* IDM, Appx13842.  To the extent the Court considers the argument, Commerce's rescission of the review with respect to China Cornici complied with applicable law because a suspended entry is a prerequisite for conducting a review.  Commerce's determination that China Cornici did not demonstrate a suspended, reviewable entry is also supported by evidence on the record and China Cornici's preferred evidence does not show a suspended, reviewable entry or suffice to undermine Commerce's finding.  Thus, the final results should be sustained.

A.    Plaintiffs Failed To Exhaust And Waived Their Theory That Commerce Lacked Statutory Authority To Rescind The Administrative Review With Respect To China Cornici

Plaintiffs contend that Commerce lacked authority to rescind the administrative review with respect to China Cornici when it concluded there was no record evidence of a reviewable entry by China Cornici during the period of review.  *See* Pl. Br. at 8-10.  Plaintiffs have failed to exhaust and waived this theory by failing to include it in their complaint and by failing to raise it before the agency.  Consequently, the argument is not properly before the Court and should not be considered.

This Court's rules require plaintiffs to set forth in their complaint "a short and plain statement of the claim showing that {they are} entitled to relief; and … a demand for the relief sought, which may include relief in the alternative or different types of relief."  USCIT Rule 8(a)(2), (3); *see also id.* Practice Cmt. (stating that, for actions commenced under 28 U.S.C. § 1581(c), the complaint must include "a statement of the issues presented by the action{.}").  The purpose of these requirements is to "give the defendant fair notice of what the … claim is and the

grounds upon which it rests{.}"  *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (discussing Fed. R.

Civ. P. 8(a)(2), which USCIT Rule 8(a)(2) mirrors).  While parties may present any argument in

favor of a claim properly presented, distinct claims are waived if not pled in the complaint.  *See*

*Kimble v. United States*, 991 F.3d 1238, 1244 (Fed. Cir. 2021) (citing *Casa de Cambio Comdiv*

*S.A., de C.V. v. United States*, 291 F.3d 1356, 1366 (Fed. Cir. 2002) ("{W}e need not address

Casa's agency theory because ... {n}o mention of this theory appears in Casa's complaint.")).

The complaint in this case contains one count pertaining to China Cornici.  *See* Compl.

¶¶ 30-42.  It challenges Commerce's denial of China Cornici's request for a separate rate and

alleges that Commerce improperly rescinded the administrative review with respect to China

Cornici "despite the information timely provided by China Cornici in its Separate Rate

Application and Supplemental Questionnaire Response."  Compl. ¶ 41.  But it does not identify a

challenge to Commerce's recission practice or set forth any theory under which a recission on

the ground articulated by Commerce was not authorized under the law.  If plaintiffs had wanted

to challenge Commerce's rescission practice or legal authority to rescind the administrative

review, they should have provided fair notice of that claim when commencing their suit.

Because plaintiffs failed to do so in their complaint, they are precluded from doing so now.  *See,*

*e.g., Kimble*, 991 F.3d at 1244 (deeming waived a claim not raised in the complaint); *U.S. Steel*

*Corp. v. United States*, 348 F. Supp. 3d 1248, 1259 (Ct. Int'l Trade 2018) ("Failure to raise and

adequately develop a legal claim results in waiver."); USCIT Rule 8(a)(2).

Moreover, even if this theory is not waived, plaintiffs failed to raise this issue before the

agency.  Although Commerce provided notice of the requirement for a suspended entry and its

practice of rescinding a review in the absence of such an entry, *see* Appx84465-84465

(application); Appx13301 (preliminary results), China Cornici did not argue that Commerce

lacked legal authority to rescind the review on that ground in its letter in lieu of a case brief, instead asserting that it had shipped subject merchandise during the period of review and its importer had paid duties, *see* Appx103104. Because it did not present any challenge to Commerce's practice or legal authority to rescind during the underlying administrative process, it did not exhaust this issue before the agency. Consequently, any such argument is not properly before the Court and should not be considered. *See* 28 U.S.C. § 2637(d); *Qingdao Sea-Line Trading Co., Ltd. v. United States*, 766 F.3d 1378, 1388 (Fed. Cir. 2014) (refusing to consider arguments not presented in the party's case briefs to Commerce).

### B. Commerce Possessed Authority To Rescind The Review With Respect To China Cornici In The Absence Of A Suspended Entry

Even if this argument has not been waived and had been presented to the agency, Commerce's decision to rescind the review with respect to China Cornici is in accordance with law. China Cornici argues that the rescission was unlawful because "Commerce failed to articulate a lawful basis for recission pursuant to the statute and guiding regulations." Pl. Br. at 2; *see id*. at 8-10. That is incorrect. As Commerce explained, its decision to rescind the review was justified pursuant to 19 C.F.R. § 351.213(d) and consistent with Commerce's requirements for a separate rate application.

### 1. Legal Framework

The United States uses a "retrospective" assessment system under which final liability for duties is determined after merchandise is imported. *See* 19 U.S.C. § 1673; 19 C.F.R. §§ 351.212(a), 351.213(a); *Canadian Solar,* 68 F.4th at 1270. Thus, the liability to pay duties accrues at entry, but the final determination of rates and liquidation – the "final computation or

ascertainment of duties," 19 C.F.R. § 159.1 – occur later.[3]  *See id.* (citing 19 C.F.R.

§ 351.212(a)).  To facilitate this retrospective system, upon issuance of an order, Commerce

directs Customs to suspend liquidation of entries covered by the order until the final rate is

determined and the merchandise can be liquidated at the determined rate.  19 U.S.C.

§§ 1673e(b), 1673b(d)(2).  At entry, importers must certify whether the merchandise is subject to

an antidumping or countervailing duty order.  *See* 19 U.S.C. § 1484(a)(1)(B).

Interested parties may annually request review of an antidumping order for a given

retrospective period; this process is known as an administrative review.  *See* 19 U.S.C.

§ 1675(a)(1); 19 C.F.R. § 351.213(e)(1));  *Canadian Solar*, 68 F.4th at 1270.  In the absence of a

review request, Commerce instructs CBP to liquidate entries at the rate previously established.

*See* 19 C.F.R. §§ 351.212(c)(1), (c)(2)).  If a review is requested, Commerce reviews the

antidumping rate applicable to specific entries of subject merchandise in the period of review.

*See* 19 U.S.C. § 1675; 19 C.F.R. § 351.213(b); *Canadian Solar*, 68 F.4th at 1270.  The

determinations made in an administrative review "shall be the basis for the assessment of

countervailing or antidumping duties on entries of subject merchandise covered by the

determination and for deposits of estimated duties."  19 U.S.C. § 1675(a)(2)(C); *see* 19 C.F.R.

§ 351.212(b)(1) (providing that, if the Commerce has conducted an administrative review of an

antidumping order, the Secretary "normally will calculate an assessment rate for each importer of

subject merchandise covered by the review" and "will instruct {Customs} to assess antidumping

duties by applying the assessment rate to the entered value of the merchandise").

---

[3] Liquidation is "final and conclusive on all persons" unless timely protested by the importer.  19 U.S.C. § 1514 (specifying the finality of liquidation and post-liquidation procedures).

Commerce also possesses authority to rescind an administrative review. *See* 19 C.F.R.
§ 351.213(d). As relevant to this case, Commerce may rescind an administrative review with
respect to a particular party "if the Secretary concludes that, during the period covered by the
review, there were no entries, exports, or sales of the subject merchandise, as the case may be."
*Id*. § 351.213(d)(3). Because of the relationship between the suspension of liquidation and
Commerce's ability to enforce duty orders by ordering liquidation at the rate calculated for the
review period, it is Commerce's practice to rescind a review pursuant to 19 C.F.R.
§ 351.213(d)(3) when there are no reviewable entries of subject merchandise during the period of
review for which liquidation is suspended. *See, e.g., Aluminum Wire and Cable from the
People's Republic of China: Rescission of Countervailing Duty Administrative Review*, 86 Fed.
Reg. 36,522, 36,523 (Dep't of Commerce July 12, 2021)*; Solid Fertilizer Grade Ammonium
Nitrate from the Russian Federation:  Notice of Rescission of Antidumping Duty Administrative
Review*, 77 Fed. Reg. 65,532, 65,533 (Dep't of Commerce Oct. 29, 2012), and accompanying
IDM (Dep't of Commerce Oct. 22, 2012).

Moreover, as discussed above, in antidumping proceedings involving non-market
economy countries, Commerce presumes that all companies within the country are subject to
government control and should be assigned a single, country-wide antidumping duty rate unless
a company rebuts that presumption by demonstrating its export activities are both de jure and de
facto independent from government control. *See Sigma,* 117 F.3d at 1405; *see also Separate-
Rates Practice*, 69 Fed. Reg. 77,722. To be considered for a separate, company-specific rate, a
company must submit a separate-rate application and substantiate its eligibility for such a rate*.
See id.* at 77,724; *see, e.g., Initiation Notice*, 87 Fed. Reg. at 21620. A separate-rate applicant
participating in an administrative review must have a suspended entry of subject merchandise

17

during the period of review.  *See Shanghai Sunbeauty Trading Co., Ltd. v. United States*, 380 F. Supp. 3d 1328, 1336 (Ct. Int'l Trade 2019) (concluding Commerce did not err in requiring a suspended entry and upholding Commerce's determination that company was ineligible for separate rate); *see also Certain Tissue Paper Products from the People's Republic of China: Final Results and Final Rescission, In Part, of Antidumping Duty Administrative Review*, 73 Fed. Reg. 58,113 (Dep't of Commerce Oct. 6, 2008) (citing Preliminary Results, 73 Fed. Reg. 18,497, 18,500 (Dep't of Commerce Apr. 4, 2008)).

2. <u>Commerce's Recission Determination Is In Accord With Law</u>

Commerce possessed the requisite legal authority to rescind the review with respect to China Cornici.  Consistent with the applicable legal framework and its normal practice, Commerce explained that China Cornici did not have a reviewable entry of subject merchandise during the period of review for which liquidation is suspended, which is a lawful justification for Commerce to rescind the review and deny China Cornici a separate rate.

Here, Commerce complied with the law and followed its standard practice in rescinding the review.  In the preliminary results, Commerce gave notice that it had preliminarily determined that China Cornici had no suspended entries of subject merchandise during the period of review and stated that, absent any evidence of a reviewable entry, pursuant to 19 C.F.R. § 351.213(d)(3), it would rescind the review of the company in the final results. *Preliminary Results*, Appx13301, and accompanying PDM, Appx10370.  In the final results, Commerce determined that China Cornici had "no reviewable entries of subject merchandise during the period of review" and therefore rescinded the review with respect to China Cornici pursuant to 19 C.F.R. § 351.213(d)(3).  *Final Results*, Appx16428.  Commerce also explained that an exporter cannot obtain a separate rate without providing Commerce an entry summary for

a suspended entry, unless other evidence of a suspended entry exists on the record.  *See* IDM, Appx13842.  Because Commerce found that China Cornici had not demonstrated that it had a suspended entry of subject merchandise during the period of review when it did not provide an entry summary for a suspended entry with its separate rate application and did not provide other evidence of a suspended entry, it rescinded the review.  *See* IDM, Appx13842-13843.

Commerce's practice of requiring suspended entries for administrative reviews is consistent with the statutory and regulatory framework that governs the administrative review process.  As set out above, Commerce is statutorily required to periodically review and determine the amount of any antidumping duty, *see* 19 U.S.C. § 1675(a)(1)(B), and its resulting determination "shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties," *id*. § 1675(a)(2)(C) (emphasis added).  Accordingly, the statutory language indicates that a party requesting an administrative review must have suspended entries that were made during the period of review on which the newly determined duties may be assessed.  Otherwise, if there were no suspended entries, the determination made in the review could not be "the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination," as mandated in the statute.  *Id*.; *see also id.* § 1675(a)(1); 19 C.F.R. § 351.212(b)(1).  Thus, Commerce's practice is consistent with the statutory command to use the results of the review not only to establish prospective cash deposit rates but also to assess duties on the reviewed entries.

Commerce's practice is also consistent with the purposes and practical realities of an administrative review.  For Commerce to "review and determine" the amount of any antidumping duty and assess the applicable duties on entries of merchandise covered by the

determination, 19 U.S.C. §§ 1675(a)(1), (a)(2)(C), there must, in fact, be suspended entries for Commerce to review and order liquidated at the newly determined rate. In the absence of suspended entries, the requesting party would essentially be asking Commerce to review an entry of merchandise that is not subject to the antidumping duty order. That result would be contrary to the statutory purpose of providing review of merchandise subject to such an order. *See id.* § 1675(a); *see also* 19 U.S.C. § 1677(25) (defining "subject merchandise"). As the Federal Circuit has recognized when reviewing Commerce's practice of not conducting an administrative review of an antidumping order when there are sales but no customs entries, "where there are no entries . . . during a period of review there is no subject merchandise and thus nothing to review and no basis for revising the cash deposit rates – so Commerce need not (indeed, cannot) conduct review." *Allegheny Ludlum v. United States*, 346 F.3d 1368, 1372 (Fed. Cir. 2003) (holding "lawful Commerce's regulatory policy of rescinding annual administrative reviews where there are no entries during the period of review and where all in-period sales can be linked to pre-period-of-review entries"); *see Canadian Solar*, 68 F.4th at 1274 ("We doubt that continuing a review where it was conclusively established that there were no entries during the period of review could ever be appropriate."). Thus, Commerce's practice of requiring a party to have a suspended entry during the period of review to participate in a review aligns with the purpose of administrative review and Federal Circuit precedent.

Plaintiffs contend the Commerce lacked authority to rescind the review with respect to China Cornici because the regulation permits rescission if Commerce concludes there are "no entries" of subject merchandise during the period of review, while Commerce rescinded the review here when it found there was "no record evidence of a *reviewable* entry" for China Cornici. Pl. Br. at 9 (emphasis in brief). This skeletal assertion is mere distraction. While

plaintiffs disagree with Commerce's application of its "usual practice" in their case, *id*. at 9, they raise no specific challenge to Commerce's authority to conduct its administrative reviews in this way.  Nor could they given that, as shown above, Commerce's rescission of an administrative review in the absence of a suspended entry is in accord with the governing legal framework, which contemplates that Commerce will determine an appropriate duty rate and apply that rate to the entry subject to review.

Rather, the crux of plaintiffs' contention seems to be that Commerce erred in rescinding the review because its stated reason for rescission does not track the precise language of 19 C.F.R. § 351.213(d)(3).  *See* Pl. Br. at 9-10.  But they cite no authority to support this contention. And to the extent plaintiffs intend to argue that the express language of the regulation does not require a suspended entry for a company to participate in an administrative review, this Court has previously rejected a similar argument.  In *Shanghai Sunbeauty Trading Co. Ltd. v. United States*, 380 F. Supp. 3d 1328, 1336 (Ct. Int'l Trade 2019), an exporter seeking a separate rate in an antidumping administrative review argued, among other things, that Commerce erred in requiring a suspended entry for review because 19 U.S.C. § 1675(a)(2)(A) provides for Commerce to review "each entry of subject merchandise" and does not require that entry be suspended.  The Court concluded that Commerce did not err in requiring a suspended entry, reasoning that accepting Sunbeauty's interpretation that a company need only show that an entry was made, not that liquidation was suspended, would require Commerce to determine a dumping margin for an entry that an importer had represented was not subject to an antidumping order, a result not contemplated by the statute.  *See id.* at 1336 (citing 19 U.S.C. § 1677(25) (defining "subject merchandise")).  The Court further observed that accepting Sunbeauty's argument

would result in "thwarting one of the principal purposes of the review" because the resulting rate would not be applied to the reviewed entry. *Id.* at 1336-37.

Plaintiffs' argument should likewise be rejected. Just as Sunbeauty tried to argue that any entry, even if not suspended, sufficed to support its separate rate application, plaintiffs here contend that China Cornici could participate in the administrative review and receive a separate rate so long as it had any entry, even if not suspended, within the period of review. *See* Pl. Br. at 8-10. But, as with the statute identified by the plaintiff in *Sunbeauty*, reading 19 C.F.R. § 351.213(d)(3) to mean that any entry suffices as a basis for administrative review, even if not suspended, would lead Commerce to determine a rate for an entry that was represented as not subject to an antidumping duty order and thwart the purpose of an administrative review as it would not be subject to liquidation at the assessed rate. Indeed, if Commerce examined entries that were not certified as subject to antidumping duties upon entry or liquidated entries, particularly those CBP had liquidated without regard to duties because the importer had declared them to be non-subject merchandise, importers would lack an incentive to properly classify merchandise upon entry. This would result in the collection of incorrect duties when entries liquidated as entered. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019*, 86 Fed. Reg. 36,102 (Dep't of Commerce July 8, 2021), and accompanying IDM (June 25, 2021).

Moreover, as Commerce has explained: "for administrative reviews, 'an exporter cannot obtain a separate rate without providing Commerce the relevant U.S. Customs 7501 Entry Summary for a suspended entry, unless other evidence of a suspended entry exists on the record.'" IDM, Appx13842 (quoting China Cornici's Separate Rate Application, Appx84466).

Plaintiffs do not specifically challenge Commerce's practice on this point or the instruction in the application. Nor do they contend that they have satisfied this requirement. Because Commerce followed its established practice here without objection from plaintiffs, *see* IDM, Appx13842-13843, and that practice is consistent with the governing legal framework, *see* 19 U.S.C. § 1675(a)(2)(C), plaintiffs have not shown that Commerce erred in finding China Cornici ineligible for a separate rate in the absence of a suspended entry of subject merchandise. *See Sunbeauty*, 380 F. Supp. 3d at 1336 (concluding Commerce did not err in requiring a respondent seeking a separate rate in an administrative review to show it had a suspended entry during the period of review).

Although plaintiffs argue that Commerce was aware that China Cornici had exported merchandise that had been entered as non-subject merchandise and that its importer had tendered duties to CBP, *see* Pl. Br. at 10, they do not identify any evidence of a suspended entry during the period of review or demonstrate that Commerce erred in requiring evidence of a suspended entry. Rather, as discussed above, Commerce may lawfully require a company seeking a separate rate in an administrative review to show that it has a suspended entry during the period view. Accordingly, the plaintiffs have not shown that Commerce's rescission determination in this case is contrary to law.

C.     Commerce's Rescission Determination Is Supported By Substantial Evidence

Commerce's determination to rescind the review with respect to China Cornici is supported by substantial evidence. Plaintiffs argue that the "record evidence clearly shows that China Cornici had entries, exports, and sales of the subject merchandise during the period of review." Pl. Br. at 11. They are incorrect.

Commerce based its finding that China Cornici did not have a reviewable entry during the period of review on the entire record, including evidence submitted by China Cornici and

entry information that Commerce had placed in the record. *See* IDM, at Appx13842-13843. China Cornici complains that Commerce could not properly find that it had no entries of subject merchandise during the period of review given the information it provided. *See* Pl. Br. at 11-12. But Commerce explained that, although China Cornici had submitted a questionnaire response that explained its proffered entry was erroneously declared as Type 1 and that it was not at fault that CBP did not change the classification of the entry to Type 3 in time for the review, it remains China Cornici's importer's responsibility to accurately declare merchandise as subject to antidumping duties at the time of entry. *See* IDM, Appx13843 (citing *Aristocraft of Am., LLC v. United States*, 331 F. Supp. 3d 1372, 1380 (Ct. Int'l Trade 2018) and *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)). Commerce also explained that it had placed entry information on the record that showed the entry for which China Cornici provided the Customs form in its original separate rate application was a Type 1 entry (*i.e.*, non-subject merchandise), rather than a reviewable entry of subject merchandise during the period of review. *See* IDM, Appx13843 (citing Mem. Regarding Entry Information for Wood Mouldings and Millwork Products from The People's Republic of China, Appx89560); Appx89560, Appx89562. Thus, Commerce's conclusion that China Cornici had not established a reviewable entry evinces a consideration of the full record and is supported by substantial evidence. Notably, plaintiffs do not challenge the accuracy or reliability of the entry information on which Commerce relied in making its determination, nor do they point to any evidence of any suspended entry.

Thus, despite China Cornici's claims, it has not identified any record evidence that the entry at issue was designated as subject merchandise. On this record, Commerce properly rescinded the review with respect to China Cornici because neither the entry documentation submitted by China Cornici nor the entry information placed on the record by Commerce

indicate that China Cornici has unliquidated entries of subject merchandise made during the period of review as to which antidumping duties can be assessed.  *See also Sunbeauty*, 380 F. Supp. 3d at 1336.  Although China Cornici may disagree with how Commerce weighed the evidence, it has not shown that Commerce's decision is not supported by substantial evidence. *See PAM, S.p.A*, 582 F.3d at 1339 (defining "substantial evidence" as "more than a mere scintilla").

### D. Any Dispute With Customs Concerning An Importer's Misclassification Of Entries Does Not Extinguish Commerce's Statutory Deadline

Finally, China Cornici asserts that Commerce was "on notice that China Cornici had filed prior disclosures with CBP" to reset certain entries and that certain litigation was underway.  Pl. Br. at 13.  While China Cornici's submissions to Commerce in this review alerted Commerce that China Cornici's importer had previously been in correspondence with CBP, *see, e.g.,* Appx13606-13607, Commerce was not involved in those interactions.  Further, although Commerce is not a party to any litigation with respect to the designation of entries, China Cornici's entries do not appear to be at issue in that suit.  *See* Def's Motion to Dismiss, *Larson-Juhl US LCC v. United States*, No. 23-00032 (Ct. Int'l Trade Jan. 8, 2024), ECF No. 28 at 11 n.7. Nevertheless, according to China Cornici, "by issuing its unlawful decision to rescind the review with respect to China Cornici, {Commerce} not only ignored record evidence that China Cornici made exports, entries, and sales of subject merchandise, but it exceeded the bounds of its authority and impeded China Cornici's ability to obtain the appropriate rate designations for their entries before the resolution of prior disclosure litigation."  Pl. Br. at 13.  This argument is without merit.

As an initial matter, for the reasons outlined above, Commerce's rescission determination is in accordance with law and supported by substantial evidence.

More pointedly, plaintiffs' complaints about the timing of Commerce's determination ignore the statutory deadlines that apply to administrative reviews.  Under 19 U.S.C. § 1675(a)(3)(A), administrative reviews are subject to time limits, including, as relevant here, the requirement that Commerce complete the final results of an administrative review within 120 days of the publication of the preliminary results, along with an option to extend that time limit for the final results to a maximum of 180 days after the publication of the preliminary results.  Here, Commerce fully extended the deadline of the final results of this administrative review until September 5, 2023.  *See* IDM, Appx13805.

While plaintiffs seem to argue that Commerce erred by issuing its decision when it knew of the ongoing dispute, *see* Pl. Br. at 13, these statutory deadlines do not permit Commerce to suspend its final results pending the outcome of any such dispute.  Critically, plaintiffs offer no theory or mechanism by which Commerce could ignore the statutory time limit.  They also ignore that Commerce gave notice of its intent to rescind, *see* PDM, Appx10370, and extended its deadline for the final results as long as the statute permits, *see* IDM, Appx13805.  Indeed, in making its determination Commerce considered all of the record information and China Cornici's arguments but determined that there was no record evidence of a reviewable entry for China Cornici.  *See* Appx13842-13843.  Thus, plaintiffs' assertion that Commerce "ignored" their evidence, Pl. Br. at 13, is baseless.  Rather, while Commerce was "on notice" of some dispute related to the classification of entries, Commerce was not positioned to resolve that dispute, but it was required to complete its administrative reviews by the statutory deadline and did not err in doing so.

To the extent plaintiffs claim that they are harmed because they are ineligible for the administrative review and their preferred rate designations, *see* Pl. Br. at 13, any such harm is not

the result of any wrongful action by Commerce.  Commerce must base its decisions on the record before it, and the interested parties are responsible for creating an adequate record.  *See QVD Food*, 658 F.3d at 1324 (holding that "the burden of creating an adequate record lies with the {interested parties} not with Commerce.").  In this case, China Cornici provided evidence of a Type 1 entry and some dispute related to that classification, but no record evidence demonstrated a suspended entry.  *See* Appx13843.  Indeed, in their complaint, plaintiffs allege that certain entries were entered as nonsubject merchandise, and the errors remained unchanged at the time they requested a review.  *See* Compl. ¶¶ 31, 36.  China Cornici, however, never placed any information on the record to show, contrary to the entry information placed on the record by Commerce, that any entry was in fact suspended.  It cannot now complain that Commerce should have ignored a statutory deadline to provide it with more time to correct a problem of its own making.

## <u>CONCLUSION</u>

For the reasons above, we respectfully request this Court to deny plaintiffs' motion for judgment on the agency record and sustain Commerce's final determination.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

<u>/s/ Claudia Burke by /s/ L. Misha Preheim</u>
CLAUDIA BURKE
Deputy Director

OF COUNSEL:                                    /s/ Katy M. Bartelma
SHANNI ALON                                    KATY M. BARTELMA
Attorney                                       Trial Attorney
Office of the Chief Counsel                    U.S. Department of Justice
for Trade Enforcement & Compliance            Commercial Litigation Branch
U.S. Department of Commerce                    Civil Division
1401 Constitution Avenue, NW                   Ben Franklin Station
Washington, DC 20230                           P.O. Box 480
                                               Washington, DC 20044
                                               Telephone: (202) 307-1438
                                               Facsimile: (202) 307-0972
                                               Email:  katy.m.bartelma@usdoj.gov


July 30, 2024                                  *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief complies with the appropriate word-count limitation. According to the word-count function of the software used to prepare this brief, the brief contains 8,090 words.

<u>s/ Katy M. Bartelma</u>
Katy M. Bartelma