## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CHINA CORNICI CO., LTD. *ET AL.*,**<br><br>      **Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>      **Defendant.** | **Before: Stephen Alexander Vaden, Judge**<br><br>**Court No. 23-00217** |

### ORDER

Upon consideration of Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record, the Government response thereto, Plaintiffs' reply, and all other papers and proceedings, it is hereby:

**ORDERED** that Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record is **GRANTED**; and it is further

**ORDERED** that this case is remanded to the U.S. Department of Commerce in accordance with the Court's decision.

**SO ORDERED.**

Date: _____, 2024    _____
New York, New York          **Stephen Alexander Vaden, Judge**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CHINA CORNICI CO., LTD.** *ET AL.*, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES,** <br><br> Defendant. | **Before: Stephen Alexander Vaden, Judge** <br><br> **Court No. 23-00217** |

<u>**PLAINTIFFS' REPLY BRIEF**</u>
<u>**CONCERNING THE MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

Mark Ludwikowski
Kevin Williams
Kelsey Christensen
Sally Alghazali

**CLARK HILL, PLC**
1001 Pennsylvania Avenue NW
Suite 1300 S
Washington, DC 20004
202-772-0909

**September 25, 2024**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

    A. RaoPing............................................................................................................1

    B. China Cornici ..................................................................................................2

    C. Defendant's Response.....................................................................................2

    D. Plaintiffs' Reply Brief .....................................................................................2

II. TRANSACTIONS INVOLVING CHEN CHUI SHOULD BE INCLUDED AS PART OF RAOPING'S SEPARATE RATE................................3

III. PLAINTIFFS DID NOT WAIVE THEIR STATUTORY ARGUMENT NOR FAIL TO EXHAUST ADMINISTRATIVE REMEDIES .........................6

IV. COMMERCE IMPROPERLY RESCINDED THE REVIEW ............................7

    A. Defendant's Legal Framework ........................................................................6

    B. Plaintiffs Satisfied the Requirements for a Review ........................................7

    C. Commerce Should Have Deviated from its Practice .......................................9

V. PLAINTIFFS DO NOT ARGUE THAT A DISPUTE WITH CUSTOMS EXTINGUISHED COMMERCE'S STATUTORY DEADLINES ..................11

VI. CONCLUSION...................................................................................................12

VII. CERTIFICATE OF COMPLIANCE ..................................................................13

VIII. CERTIFICATE OF SERVICE ...........................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (June 28, 2024) .................................. 6, 9

*Shanghai Sunbeauty Trading Co. Ltd. v. United States*, 380 F. Supp. 3d 1328
(CIT 2019) ................................................................................................................................ 8

*Timken Co. v. United States*, 60 F.Supp. 304 (CIT 1986) ............................................................. 9

*Canadian Solar Int'l v. United States*, 68 F.4th 1267 (Fed. Cir. 2023) ..........................................7

**OTHER AUTHORITIES**

*Extension of Deadlines for Final Results of the Administrative Review of the
Agreement Suspending the Antidumping Duty Investigation on Tomatoes from
Mexico*, A-201-820 9 (July 5, 2024) .......................................................................................... 11

*Wood Mouldings and Millwork Products From the People's Republic of China:
Final Results of Antidumping Duty Administrative Review; Final Determination
of No Shipments; and Partial Rescission; 2020-2022* ................................................................ 1, 2

**REGULATIONS**

19 C.F.R. § 351.213(b) ................................................................................................................... 7

19 C.F.R. §§ 351.212(c)(1) ............................................................................................................. 7

19 U.S.C. § 1675 ............................................................................................................................. 7

19 C.F.R. § 351.212 (c)(2) .............................................................................................................. 7

## PLAINTIFFS' REPLY BRIEF

**I.     INTRODUCTION**

Plaintiffs China Cornici Co., Ltd. and RaoPing HongRong Handicrafts Co., Ltd. (d.b.a. Chen Chui Global Corp.) (collectively, "Plaintiffs"), foreign suppliers of the subject merchandise, by and through their attorneys, hereby submit this Reply Brief concerning Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record (ECF 21) and Defendant's July 30, 2024, Response (ECF 23) thereto. The procedural posture for Plaintiffs in this case differs somewhat from the related appeal at CIT 23-216. Here, Plaintiff RaoPing HongRong Handicrafts Co., Ltd. ("RaoPing") and Plaintiff China Cornici Co., Ltd. ("China Cornici") have distinct underlying facts and legal arguments.

   A.     RaoPing

Plaintiff RaoPing HongRong Handicrafts Co., Ltd. ("RaoPing"), qualified as a separate rate company in the first annual antidumping duty administrative review and challenged the U.S. Department of Commerce's ("Commerce") refusal to clarify that RaoPing's exports of subject merchandise, made through the trading company, Chen Chui Global Corp. ("Chen Chui"), were entitled to the "separate rate." *See* Federal Register Notice *Wood Mouldings and Millwork Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; Final Determination of No Shipments; and Partial Rescission; 2020-2022* ("Final Results") Appx16427-16430. RaoPing requested that Commerce's Final Results be remanded with instructions that Commerce clarify that RaoPing's entries, including those made through the trading company, Chen Chui, shall be assigned the 0.0% rate that was calculated for RaoPing as a separate rate company and to issue corresponding instructions to U.S. Customs and Border Protection ("Customs" or "CBP").

1

B.    China Cornici

Plaintiff China Cornici Co., Ltd. ("China Cornici") challenged Commerce's improper recission of review with respect to China Cornici in the first annual AD administrative review of *Wood Mouldings and Millwork Products from the People's Republic of China*, Inv. No. A-570-117, and the accompanying issues and decision memorandum. *See* Federal Register Notice *Wood Mouldings and Millwork Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; Final Determination of No Shipments; and Partial Rescission, 2020-2022* ("Final Results") Appx16427-16430; Final Issues and Decision Memorandum for the Final Results of the 2020-2022 Antidumping Duty Administrative Review, Appx13804-13849.

C.    Defendant's Response

Defendant's Response to the Rule 56.2 Motion, ECF 23, argued that: (1) Commerce's decision to find Chen Chui ineligible for a separate rate was supported by substantial evidence and in accordance with law; and (2) Commerce's decision to rescind the review with respect to China Cornici was in accordance with law.

D.    Plaintiffs' Reply Brief

Plaintiffs' reply brief: (1) reasserts that Commerce erred by not including transactions made through Chen Chui under the separate rate granted to RaoPing; and (2) generally mirrors the arguments in the concurrently filed Reply Brief for CIT 23-216. Very similar legal arguments generally apply here with respect to the recission of the countervailing duty review. Plaintiffs generally repeat the below arguments below, with modifications as necessary in order to account for the different underlying administrative records and to provide appropriate citations to the administrative record.

## II.   TRANSACTIONS INVOLVING CHEN CHUI SHOULD BE INCLUDED AS PART OF RAOPING'S SEPARATE RATE

RaoPing's Separate Rate Application ("SRA") and accompanying supplemental questionnaire demonstrated that Chen Chui was an integral part of its sales distribution to the United States. Chen Chui is a Taiwanese trading company for RaoPing. The sales pattern for picture frames made and exported by RaoPing to the United States is explained in the SRA at page 6 and Exhibits 1 and 2. Appx2405 and Appx85224, Appx2421–2427 and Appx85240-85276. As explained therein, RaoPing exports the merchandise through several steps using three third-country trading companies, the last of which is Chen Chui. At no point does Chen Chui take physical custody of the subject merchandise being exported. As indicated on page 4 of the SRA, the physical product is exported from China directly to the United States by RaoPing. *See* Appx2403 and Appx85222. It is not shipped to a third country. *Id*. In other words, Chen Chui is an intermediary for administrative and tax purposes. The picture frames are not shipped to nor exported from Taiwan.

This is a normal process in the picture frames industry and when buying frames from RaoPing, U.S. importers are accustomed to seeing shipping and transaction-related documents from both RaoPing and Chen Chui (e.g., packing list and bank payment confirmation) which are included in Exhibit 1 of the SRA. Appx2421–2422 and Appx85240-85271. To those U.S. customers, purchases from RaoPing are analogous to purchases from Chen Chui, hence the reference to the informal label d.b.a. Appx94127-94129. However, both the business license and export license are in RaoPing's name as indicated in Exhibits 3 and 4. Appx2428–2431 and Appx85277-85282. As a Taiwanese company with its main operations and management in Taiwan, Chen Chui lacks the requisite qualifications to export from China; it is solely a selling

3

agent for RaoPing. Requiring a distinct SRA from Chen Chui is contrary to the SRA guidance provided by Commerce.

It is troubling that Commerce implies that Chen Chui is required to have, yet is ineligible, for a separate rate. Chen Chui should not have to be eligible for a separate rate because it is neither a Chinese company nor the actual exporter from China – both requirements to complete the SRA pursuant to Commerce's own guidance. That Chen Chui is neither a Chinese company nor the actual exporter from China is undisputed and is part of Commerce's record. *See* Appx2394-2450 and Appx85213-85340, Appx4711-4725 and Appx88594-88644, and Appx9901-9915 and Appx94107-94148. The transactions referenced in these submissions were treated by Commerce as exports by RaoPing, not Chen Chui. It was on the basis of those very transactions that Commerce calculated RaoPing's separate rate. Defendant failed to provide an adequate explanation as to why Commerce treated those same exports differently at the time of calculating a separate rate compared to the application of those rates as set forth in its Final Results. It is also alarming that Commerce would now presumptively label a Taiwanese company (Chen Chui), which does not hold an export license from China, to be an exporter under an antidumping order against China without first taking full account of the provided documentation to establishing the true nature of the transactions.

The fact that the MID (Manufacturer/Shipper ID) in Block 13 on the CBP Entry Summary Form 7501 lists Chen Chui is not indicative that Chen Chui is the actual manufacturer or exporter from China. *See* Appx2421-2422 and Appx85269. As indicated in the standard instructions for the CBP Form 7501, available on CBP's website, at https://www.cbp.gov/sites/default/files/assets/documents/2023-Nov/CBP%20Form%207501.pdf, Block 13 is "provided to accommodate the manufacturer/shipper identification code. This code

4

identifies the manufacture/ shipper of the merchandise by a constructed code. The method for deriving the code can be found in Appendix 2. For the purposes of this code, the manufacturer should be construed to refer to the invoicing party or parties (manufacturers or other direct suppliers). The name and address of the invoicing party, whose invoice accompanies the CBP entry, should be used to construct the MID. The manufacturer/shipper identification code is required for all entry summaries and entry/entry summaries, including informal entries, filed on the CBP Form 7501." Here, Chen Chui is the invoicing party – which is why it is listed in Block 13 – but not an exporter of subject merchandise from China. *See* Appx2421-2422 and Appx85269.

Since Chen Chui is not the actual exporter of subject merchandise from China, and the frames are never shipped to Taiwan, Chen Chui should not have to complete an SRA, or seek to qualify for a separate antidumping rate. Moreover, as a Taiwanese and wholly market-economy owned company, Chen Chui is not subject to the presumption of Chinese government control, which the SRA seeks to confirm. If it is required to do so, then the time has come to fundamentally reexamine the purpose of Commerce's SRA process and its many deficiencies, the most glaring of which would be what Commerce is proposing here – the imposition of the SRA on unsuspecting, private, and market-economy companies.

Commerce can easily confirm that RaoPing's transactions that include Chen Chui in Block 13 of the 7501 Form are exports by RaoPing, and qualify for RaoPing's separate rate. It should make this finding and clarify that RaoPing's SRA rate applies to such entries by issuing a memorandum or letter to the file or by issuing clarifying instructions to CBP.

### III. PLAINTIFFS DID NOT WAIVE THEIR STATUTORY ARGUMENT NOR FAIL TO EXHAUST ADMINISTRATIVE REMEDIES

Defendant argued that Plaintiffs waived and failed to exhaust the argument that Commerce lacked the statutory authority to rescind the review on the basis that Plaintiffs did not assert this argument before the agency or in their complaint. Defendant Response (ECF 23) at 13 – 15. Pursuant to the Court's Scheduling Order (ECF 17), Plaintiffs incorporate by reference the duplicative arguments outlined in its Reply Brief, Section II, filed in the case number 23-216, which similarly highlight that Plaintiffs sufficiently raised the statutory authority argument at the appropriate time on appeal when the affirmative decision to rescind was made by Commerce in the Final Results, and that contrary to Defendant's assertions, such an argument was not waived by the short and plain statements of the Complaint. *See* Complaint (ECF 9) at ¶ 41, Appx2021-2083, Appx10349-10362, and Appx13605-13610.

Plaintiffs reiterate, from the Reply Brief in CIT 23-216, that the agency is entitled to no deference with respect to its interpretation of the bounds of its statutory authority. *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244, 2261 (June 28, 2024).  It is incumbent upon the Courts, not the agency, to decide all relevant questions of law. *Loper* at 2261. Defendant does not contest that Plaintiffs argued that recission of the reviews were improper. The question of the agency's statutory authority is relevant to whether recission was proper and, as such, it is appropriate for this Court "set aside any such action inconsistent with the law as {it} interpret{s} it." *Loper* at 2261. Plaintiffs respectfully request that this Court not deny them the opportunity to present relevant statutory and regulatory support for their arguments that recission of the reviews was improper.

6

## IV.   COMMERCE IMPROPERLY RESCINDED THE REVIEW

The following legal arguments generally mirror the arguments presented in the concurrently filed Reply Brief at CIT 23-216. However, Plaintiffs present the arguments herein in order to identify the proper underlying appellate documents and administrative record citations relevant to the present case and to account for any changes required by the separate Response Brief.

### A.   Defendant's Legal Framework

In support of its argument that Commerce articulated a lawful basis for recission, Defendant presented a guiding legal framework. Defendant Response (ECF 23) at 15 – 18. Plaintiffs highlight relevant excerpts of the framework below. First, Defendant acknowledged that "the liability to pay duties *accrues at entry*." Defendant Response (ECF 23) at 15 (emphasis added). Defendant explained that "Interested parties may annually request review of a countervailing duty order for a given retrospective period; this process is known as an administrative review." Defendant Response (ECF 23) at 16. Next, Defendant stated that:

> In the absence of a review request, Commerce instructs CBP to liquidate entries at the rate previously established. *See* 19 C.F.R. §§ 351.212(c)(1), (c)(2)). If review is requested, Commerce reviews the antidumping rate applicable to specific entries of subject merchandise in the period of review. *See* 19 U.S.C. § 1675; 19 C.F.R. § 351.213(b); Canadian Solar, 68 F.4th at 1270.

Defendant Response (ECF 23) at 16 (citations in original). Finally, Defendant acknowledged that it is "The determinations made in an administrative review {that} 'shall be the basis for the assessment of countervailing or antidumping duties. . . .'" Defendant Response (ECF 23) at 16 (citations omitted).

### B.   Plaintiffs Satisfied the Requirements for a Review

7

In keeping with the framework identified by Defendant, Plaintiffs entered subject merchandise during the relevant periods of review. *See* Appx84456- -84592, Appx84593-84669, and Appx103097-103102. Despite Plaintiffs' initial error in misidentifying the merchandise as Type 01 entries rather than as Type 03 entries, for which antidumping and countervailing duties were owed, the liability to pay such duties nonetheless accrued at the time of entry. *See* Defendant Response (ECF 23) at 15. Upon realizing the initial error in entry documents, Plaintiffs retained counsel, have gone to great efforts to rectify the mistake, and sought to pay the antidumping and countervailing duties that accrued on their imports at the time of entry.

Defendant did not contest that Plaintiffs timely requested review for their entries of subject merchandise. *See generally* Defendant Response (ECF 23). The merchandise covered by Plaintiffs' request for review was subject to the relevant antidumping and countervailing duty orders. *See* Appx1006-1008. As a result, Commerce should have reviewed the antidumping or countervailing duty rate for merchandise covered by the request for review. This is true regardless of the suspension status because the antidumping and countervailing duty liability accrues at the time of entry. Despite evidence that Plaintiffs entered subject merchandise during the period of review and the timely requests for review, Commerce improperly rescinded the review on the basis that there were no suspended entries.

Defendant attempted to justify the improper recission by stating that recission adhered to Commerce's "practice of requiring a party to have a suspended entry to conduct an administrative review." Defendant's Response (ECF 23) at 20. Defendant's reliance on *Shanghai Sunbeauty Trading Co. Ltd. v. United States*, 380 F. Supp. 3d 1328, 1336 (CIT 2019) should not be applied to the facts in theses underlying proceedings. As Defendant acknowledged, the Court in *Sunbueaty* observed that the resulting rate would not be applied to the reviewed entry,

"thwarting one of the principal purposes of the review." Defendant's Response (ECF 23) at 21 – 22. That consideration does not apply here. For the reasons explained in the corresponding Reply Brief at CTI 23-216, and reiterated below, Plaintiffs in this case are actively seeking to resolve the status of its entries with Customs and to apply the resulting rate to the reviewed entries.

Defendant's concern about only establishing prospective cash deposit rates is also unwarranted. *See* Defendant's Response (ECF 23) at 19. Here, Plaintiffs did not seek review solely, or even primarily, for the purpose of revising a forward-looking cash deposit rate, nor do they seek review to avoid properly classifying their merchandise. Plaintiffs sought a review of the antidumping and countervailing duty rates that accrued on their imports at the time of entry; Plaintiffs' interests are retrospective. By contrast, seeking to review a cash deposit rate would be a forward-looking endeavor in an attempt to secure a more favorable rate on future imports. In line with the legal framework presented by Defendant, Plaintiffs were interested parties which requested annual reviews on subject imports for a retrospective period. *See* Defendant Response (ECF 23) at 9 ("Interested parties may annually request review of an antidumping order for a given retrospective period; this process is known as an administrative review.").

    C.    <u>Commerce Should Have Deviated from its Practice</u>

Even if it is Commerce's practice to rescind a review when there are no suspended entries, Defendant Response (ECF 23) at 7, Commerce's statutory and regulatory framework makes clear that it should have deviated from such practice in the underlying reviews. *See supra* at Sections III(A) and (B). In addition to the statutory and regulatory framework, the factual information on the underlying records required Commerce to deviate from its practice in order to reach a final determination based on substantial evidence and in accordance with the law. Denying Plaintiffs the opportunity to participate in the underlying reviews was improper and contrary to Commerce's statutory obligations. Commerce's refusal to deviate from its practice

here was unreasonable and otherwise not supported by the law. *See Timken Co. v. United States*, 60 F.Supp. 304, 312 (CIT 1986) ("An agency's interpretation of a statute it administers need only be reasonable."). Whether Commerce's rote application of its usual practice was proper constitutes a question of law that is within the purview of this Court. *See Loper* at 2261.

  Factual information on the record in the underlying reviews that support Plaintiffs position included a prior disclosure letter to Customs, payment of duties to Customs, and a request to Customs to suspend entries and reset them to Type 03, as well as a request for administrative review to Commerce on such entries made during the POR. *See* Appx88576-88593. This information unambiguously demonstrates that Plaintiffs entered subject merchandise during the period of reviews, for which Plaintiffs timely requested reviews by Commerce. *See id*; Appx1006-1008. These facts are not undermined by Plaintiffs' initial error on entry documentation, which was also readily explained on the underlying administrative records. *See* Appx88576-88593. These record facts demonstrate that Commerce should have deviated from its practice and permitted Plaintiffs to participate in the reviews.

  Defendant also sought to justify Commerce's practice by stating that the stated purpose for this practice is "to enforce its CVD orders." Defendant Response (ECF 23) at 7. However, Plaintiffs' requests for reviews stem from their attempt to comply with the antidumping and countervailing duty orders and the liabilities accrued on their imports at the time of entry. Defendant presents no compelling reason how enforcement of Commerce's orders is best served by a rote adherence to its practice and denying Plaintiffs the opportunity to participate in the respective reviews.

## V. PLAINTIFFS DO NOT ARGUE THAT A DISPUTE WITH CUSTOMS EXTINGUISHED COMMERCE'S STATUTORY DEADLINES

Defendant misconstrues Plaintiffs' arguments concerning the dispute with Customs and Commerce's statutory deadlines. *See* Defendant Reply (ECF 23) at 25 – 27. Plaintiffs did not assert that Commerce should have suspended its final results pending the outcome of a CBP dispute or protest. Plaintiffs simply emphasized that, in light of the ongoing dispute, Plaintiffs maintained an interest in the outcome of the relevant reviews. Defendants unlawful decision to rescind the review with respect to Plaintiffs impeded Plaintiffs' ability to obtain the appropriate rate designations for their entries of subject merchandise.

Evidence of an ongoing dispute with Customs was used to support Plaintiffs' claims that they imported subject merchandise during the relevant periods of review, and to indicate that Plaintiffs were working to reset the entry types for the relevant imports. *See* Appx88576-88593. Regardless of the suspension status of Plaintiffs' entries at the time of review, Commerce was "on notice" that the entry types may be reset by Customs, such that Plaintiffs and their U.S. importer maintained an ongoing interest in participation in the relevant reviews. As such, Commerce's decision to rescind the reviews with respect to Plaintiffs was improper.

Notwithstanding the foregoing, Plaintiffs note that Commerce has shown a willingness to ignore its statutorily mandated deadlines. *Compare, e.g.,* Memorandum to Ryan Majerus, Deputy Ass't Sec'y for Policy Negotiations, from Steven Presing, Acting Deputy Ass't Sec'y for Policy and Negotiations Enforcement and Compliance, Subject: *Extension of Deadlines for Final Results of the Administrative Review of the Agreement Suspending the Antidumping Duty Investigation on Tomatoes from Mexico*, A-201-820 9 (July 5, 2024) (in which Commerce determined to extend the final results of an administrative review beyond the statutorily mandated deadline), *with* Defendant Reply (ECF 23) at 26 ("Critically, plaintiffs offer no theory

11

or mechanism by which Commerce could ignore the statutory time limit."). If Defendant wishes to proceed with this argument, Plaintiffs must assert that Commerce's willingness to extend its deadlines beyond the statutory time frame in certain proceedings but not here is both arbitrary and capricious.

## VI. CONCLUSION

For the reasons discussed above, and the legal arguments incorporated by reference, Plaintiffs respectfully request that this Court vacate Commerce's decision to deny RaoPing's request and its decision to rescind review with respect to China Cornici. Accordingly, RaoPing respectfully requests that this Court remand Commerce's Final Results, with instructions that Commerce amend its Final Results to clarify that RaoPing's entries, including those made through the trading company, Chen Chui Global Corp., shall be assigned the 0.0% rate that was calculated for the separate rate companies and to issue corresponding instructions to CBP. China Cornici respectfully requests that the Court vacate and remand Commerce's decision to rescind the administrative review with respect to China Cornici, with instructions that Commerce assign China Cornici the AD rate assigned to the separate rate companies under review and issue corresponding instructions to CBP.

    Respectfully submitted,

    <u>/s/ Mark Ludwikowski</u>
    Mark Ludwikowski
    Kevin Williams
    Kelsey Christensen
    Sally Alghazali

    *Counsel to China Cornici Co., Ltd. and RaoPing HongRong Handicrafts Co. Ltd. (d.b.a. Chen Chui Global Corp.)*

Dated: September 25, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this motion complies with the word limitation requirement. The word count for Plaintiffs' Reply Brief, as computed by Clark Hill's word processing system Microsoft Office Professional, is <u>3,355</u> words.

<u>/s/ Mark Ludwikowski</u>
Mark Ludwikowski

*Counsel to China Cornici Co., Ltd. and RaoPing HongRong Handicrafts Co. Ltd. (d.b.a. Chen Chui Global Corp.)*

Dated: September 25, 2024

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was electronically filed on September 25, 2024, via the Court's ECF filing system, which automatically serves notice on counsel of record.

*/s/ Mark Ludwikowski*
Mark Ludwikowski

*Counsel to China Cornici Co., Ltd. and RaoPing HongRong Handicrafts Co. Ltd. (d.b.a. Chen Chui Global Corp.)*

Dated: September 25, 2024