

R. Kevin Williams
T (312) 985-5907
F (312) 985-5956
Email:KWilliams@ClarkHill.com

Clark Hill
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
T (312) 985-5900
F (312) 985-5999

April 4, 2025

Via CM/ECF Filing

Hon. Stephen Alexander Vaden, Judge
U.S. Court of International Trade
1 Federal Plaza
New York, NY 10278

      Re:   *China Cornici Co. Ltd., et al. v. United States*, Court Nos. 23-00216 and 23-00217; Plaintiff's Supplemental Briefing Pursuant to Minute Order issued on March 25, 2025.

Dear Judge Vaden:

On behalf of Plaintiffs China Cornici Co. Ltd. and RaoPing HongRong Handicrafts Co., Ltd. ("Plaintiffs"), we respectfully submit this supplemental briefing as requested by the Court at the conclusion of oral argument on March 25, 2025. In its Minute Order, the Court asked the Parties to address "(1) the statutory scheme of who is eligible to apply for a separate rate and (2) the application of that scheme to the facts of this case." We address each point in turn, with due regard for the statute—and, just as critically the absence thereof.

      **I.**    **Statutory Scheme: A Construct of Convenience**

Let us begin by stating what ought to be irrefutable: there is no statutory foundation for the "separate rate" process.[1] It was not born of congressional deliberation or democratic enactment, but rather of bureaucratic invention. Its origin lies in the Department of Commerce's 1991 decision in *Sparklers from China,* wherein Commerce unilaterally declared that exporters

---

[1] 19 USCA Chapter 4, Subtitle IV Countervailing and Antidumping Duties (§§ 1671-1677n).

from non-market economies might be entitled to separate, company-specific margins if they could demonstrate independence from government control.[2]  "We have determined that exporters in nonmarket economy countries are entitled to separate, company-specific margins when they can demonstrate an absence of central government control, both in law and in fact, with respect to exports."[3] In short, a doctrine not legislated, but conjured.

Subsequent refinements, such as those introduced in *Silicon Carbide* dressed this practice in the garb of legalism by adding the dual requirement of *de jure* and *de facto* independence. [4] "[W]e believe a PRC respondent may receive a separate rate if it establishes on a de jure and de facto basis that there is an absence of governmental control. We have, therefore, adapted and amplified the test set out in {*Sparklers from China"*} to determine whether the respondents in this case are entitled to separate rates."[5] These refinements did not derive from statute but from a pattern of agency fiat, often shaped by this Court's judicial rebuke or remand. .[6] To describe this evolution as "law" or as consistent would be generous.

---

[2] *Final Determination of Sales at Less Than Fair Value: Sparklers from the People's Republic of China*, 56 Fed. Reg. 20588 (May 6, 1991).

[3] *Id.* at 20589.

[4] *Notice of Final Determination of Sales at Less Than Fair Value: Silicon Carbide from the People's Republic of China*, 59 Fed. Reg. 22585 (May 2, 1994).

[5] *Id.* at 22587.

[6] *See Notice of Proposed Rulemaking: Regulations Enhancing the Administration of the Antidumping and Countervailing Duty Trade Remedy Laws*, 89 Fed. Reg. 57286, 57294 (July 12, 2024).

[6] *Id.* at 57296.

From its inception until March 2015, our research indicates that Commerce's practice was to limit consideration of separate-rate applications "to firms that exported subject merchandise to the United States during the period of investigation/review."[7]

This is a crucial fact, not merely procedural trivia. Commerce did not, until that point, impose the additional requirement that an exporter must also have an *entry with suspended liquidation*. And when it did adopt this requirement, it did so neither through notice nor explanation. The 2015 separate rate application—remarkably—cites no decision, no policy memorandum, no legal authority at all to justify this shift:

> The Department assigns separate rates in non-market economy ("NME") cases only if the applicant can demonstrate an absence of both de jure and de facto governmental control over its export activities in accordance with the separate-rates test criteria. <u>In determining whether companies should receive separate rates, the Department focuses its attention on the exporter rather than the producer</u>. See Notice of Final Determination of Sales at Less Than Fair Value: Manganese Metal from the People's Republic of China, 60 FR 56045 (November 6, 1995). Consequently, in this proceeding, the Department will limit its consideration of separate-rate applications to firms that exported the merchandise to the United States. Further, to be considered for separate-rate treatment, the applicant must have a relevant U.S. sale of subject merchandise to an unaffiliated purchaser, and, <u>for an administrative review, the applicant also must have a suspended entry of subject merchandise into the United States during POR</u>. The sale to an unaffiliated purchaser generally must be during the period of investigation or review, or, in a review, a sale related to a suspended POR entry.[8]

The March 2015 separate application appears to be the first time that Commerce required a separate rate applicant to have an entry with suspended liquidation to be eligible for a separate rate. Only in 2024 did Commerce move to codify its opaque practice into regulation. [9] And

---

[7] *See* http://enforcement.trade.gov/nme/sep-rate-files/app-20150209/prc-sr-app-20150206.pdf.

[8] *See* Separate Rate Application dated Mar. 23, 2015 at http://enforcement.trade.gov/nme/sep-rate-files/app-20150323/prc-sr-app-20150323.pdf. We also reviewed separate rate applications available on the Commerce Access website.

[9] *See Notice of Proposed Rulemaking: Regulations Enhancing the Administration of the Antidumping and Countervailing Duty Trade Remedy Laws*, 89 Fed. Reg. 57286 (July 12, 2024).

even then, the commentary accompanying the proposed rule offered little more than a tautology: that a separate rate serves no purpose if there is no suspended entry to which duties may be applied. Commerce stated in the notice of proposed rulemaking that it—

> would not consider separate rate applications in … administrative reviews if it is possible that no entry was suspended during the period of review for a particular entity, because without entries to which Commerce could assess duties there would no purpose for a separate rate analysis.{[10]}

One might call this circular reasoning; one might also call it *post hoc* rationalization. What it is not, however, is statutory authority. The proposed rule was adopted in a Federal Register notice dated December 16, 2024, with an effective date of January 15, 2025.[11] The requirement for a separate rate applicant to have a suspended entry during the period of administrative review was codified in 19 C.F.R. 351.108(d)(2), which states:

> In a new shipper review or administrative review in which the entity has not been previously assigned a separate rate, the entity will normally file a separate rate application on the record no later than 14 days following publication of the notice of initiation in the Federal Register. In both new shipper reviews and administrative reviews, documentary evidence of an entry of subject merchandise for which liquidation was suspended during the period of review must accompany the separate rate application.

The Federal Register notice of the final rulemaking does not include commentary on the suspended liquidation requirement. Indeed, the regulation codified at 19 C.F.R. 351.108(d)(2), effective January 15, 2025—many months after this dispute arose—is explicit in its newness. It requires a separate rate application be accompanied by "documentary evidence of an entry subject merchandise for which liquidation was suspended during the period of review." A requirement now codified, yes—but not applicable *retroactively* and certainly not to this case.

---

[10] *Id.* at 57296.

[11] *Final Rule: Regulations Enhancing the Administration of the Antidumping and Countervailing Duty Trade Remedy Laws*, 89 Fed. Reg. 101694 (Dec. 16, 2024).

## II.     Application to Present Case: Procedure Over Substance

Having examined the roots—or rather, the rootlessness—of the separate rate process, we turn to its application in this case. What emerges is a tale of bureaucratic rigidity triumphing over both fairness and fact.

The period of review ("POR") here concluded long before the codification of the suspended liquidation requirement. Yet Commerce applied this uncodified requirement to rescind the review for China Cornici and RaoPing on the grounds that neither had an entry with suspended liquidation. The irony, or perhaps the absurdity, lies in what followed.

Commerce approved RaoPing's separate rate application in the antidumping review[12]—only to then decline to apply that rate to shipments made through its third-party Taiwanese trading company Chen Chui Global Corp. ("Chen Chui"),[13] because Chen Chui was was not subject to the review.[14] This logic collapses under scrutiny.

First, Chen Chui, as a third-party trading company, had no standing to request a review in the first place.[15] Second, and more importantly, Commerce's own practice holds that the focus of the separate rate analysis is on the exporter, not the producer—and certainly not on an

---

[12] *See* Federal Register Notice *Wood Mouldings and Millwork Products From the People's Republic of China: Final Results of Antidumping Administrative Review; Final Determination of No Shipments; and Partial Rescission; 2020-2022* ("Final Results") (P.R. 472); Final Issues and Decision Memorandum for the Final Results of the 2020-2022 Antidumping Administrative Review (P.R. 460).

[13] As explained in RaoPing's separate application, Chen Chui is a trading company organized under Taiwanese law and headquartered in Taiwan. P.R. 107, C.R. 72-73.

[14] *Id.*

[15] *See* 19 CFR § 351.213(b)(2)-(3) which specifies that only exporters, producers or importers may request review.

unaffiliated market economy intermediary. To use Chen Chui's absence from review as a basis to deny RaoPing's separate rate is to misapply the very doctrine Commerce claims to uphold.

Even more troubling is Commerce's rote invocation of the suspended liquidation requirement to disqualify both China Cornici and RaoPing. Pursuant to its practice since March 2015, Commerce rescinded the antidumping administrative review for China Cornici and the countervailing duty administrative review for both RaoPing and China Cornici because the companies did not have an entry with suspended liquidation during the PORs. While this may be technically true, in their Rule 56.2 Motion for Judgment on the Agency Record and Reply Brief Plaintiffs laid bare the true sequence of events: entries were made; duties were not deposited due to error; the error was corrected through a voluntary disclosure to Customs; over $2 million was deposited for antidumping and countervailing duties owed; and a request was made for suspension of liquidation. U.S. Customs and Border Protection ("Customs"), not the Plaintiffs, failed to act.

To hold that Plaintiffs are disqualified from separate rate treatment or rescission of the review due to Customs failure—despite Plaintiffs having fulfilled their obligations in good faith and to great financial cost—is an offense to reason, to fairness, and to law. Commerce's mechanical application of an uncodified policy to retroactively deny Plaintiffs rights, amounts to administrative whim.

**III.    Conclusion**

There is a name for what happens when an agency creates policy in the shadows, applies it without authority, and then codifies it only after the fact: it is governance without accountability. Plaintiffs do not seek special treatment—they seek lawful treatment. Commerce's conduct in this case is not consistent with the statute, because no statute supports it. It is not consistent with the regulations, because the relevant regulation did not yet exist. We respectfully

submit that the application of the separate rate policy in this case was arbitrary, unsupported by law, and must be set aside.

                Sincerely,

                CLARK HILL

                /s/ Robert Kevin Williams

                Robert Kevin Williams
                Mark Rett Ludwikowski
                Kelsey Christensen
                Sally Alghazali[16]

RKW:rkw

---

[16] Admitted to Minnesota Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Facts Supporting Reversal of Commerce Decision to Rescind Administrative Reviews**

- China Cornici and RaoPing both exported subject merchandise to the United States during the respective antidumping and countervailing duty periods of review.

- Commerce rescinded the reviews because there were no suspended liquidation entries during the periods of review.

- The subject merchandise exported by China Cornici and RaoPing was imported by Larson-Juhl who did not file the entries as Type 03 or deposit antidumping and countervailing duties. Larson-Juhl corrected this error through a voluntary disclosure to Customs, depositing the duties, and asking Customs to change the entry type to 03 and suspend liquidation of the entries. Customs did not honor this request.

- But for Customs failure to reset the entry type and suspend liquidation, Commerce would not have rescinded the reviews.

- Commerce cannot rescind administrative reviews when there are entries, exports or sales of the subject merchandise. 19 CFR § 351.213(d)(3).