# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

|  |  |
|---|---|
| CHINA CORNICI CO., LTD. ET AL., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) Court Nos. 23-00216 ) and 23-00217 ) |
| Defendant. | ) ) ) |

## <u>PLAINTIFFS' COMMENTS ON REMAND REDETERMINATION</u>

Mark Ludwikowski
R. Kevin Williams
Kelsey Christensen

Clark Hill PLC
1001 Pennsylvania Avenue, NW
Suite 1300 South
Washington, DC 20004
Telephone (202) 640-6680
*Counsel to Plaintiffs*

Dated: June 1, 2026

**TABLE OF CONTENTS**

Cases  ...........................................................................................................................4

Statutes, Regulations, and Rules ................................................................................6

Other Authorities ......................................................................................................6

I.      INTRODUCTION ...........................................................................................6

II.     BACKGROUND ...........................................................................................10

        A.      The Court's Remand Order....................................................................10

        B.      Commerce's AD Final Remand Redetermination .................................11

        C.      Commerce's CVD Final Remand Redetermination .............................12

        D.      Commerce's Draft-Comment Schedule and Removal of Plaintiffs'
                Procedural Objection .........................................................................13

III.    STANDARD OF REVIEW .............................................................................13

IV.     ARGUMENT.................................................................................................15

        A.      Commerce Did Not Comply with the Court's Remand Because It
                Again Allows Entry Documentation Formalities to Defeat the
                Review and Relief the Court Ordered...................................................15

        B.      Prior Disclosure and Duty Tender Were Not Irrelevant Simply
                Because a PSC Was Not Filed...............................................................16

        C.      Commerce's "Cash Deposit Only" CVD Remedy is Incomplete..........17

        D.      Commerce's Denial of a Separate Rate to China Cornici Is
                Unsupported by Substantial Evidence and Not in Accordance with
                Law .....................................................................................................18

                1.      Commerce Treated One Category of Pricing
                        Documentation as Dispositive, Rather Than Applying the
                        Required Separate-Rate Analysis .............................................18

                2.      Commerce Ignored or Discounted Evidence That Detracts
                        from Its China-wide Conclusion...............................................19

                3.      Commerce Did Not Give China Cornici a Fair Chance to
                        Address the Specific Affidavit Theory Commerce Used
                        Against It................................................................................20

      4.     The Appropriate Remedy is Either Entry of China Cornici's Separate Rate or a Narrowly Instructed Remand ......................................21

   E.   Commerce's Refusal to Apply RaoPing's Separate Rate to the Chen Chiu Entries Remains Contrary to the Regulation and the Court's Remand Order ..................................................................21

      1.     Commerce Conceded the Relevant Commercial Chain ............................21

      2.     The Regulation Applies RaoPing's Rate to Third-Country Reseller Entries ..................................................................23

      3.     Commerce's New "Identified RaoPing on the Entry Summary" Condition is Extra-Regulatory and Recreates the Error the Court Rejected ..................................................................24

      4.     The Court Should Direct Commerce to Apply RaoPing's Separate AD Rate to the Chen Chiu Entries Tied to RaoPing-produced Merchandise ..................................................................25

   F.   Commerce's Compressed Draft-Comment Schedule and Removal of Plaintiffs' Procedural Objection Confirm That Further Remand Is Appropriate ..................................................................25

      1.     Plaintiffs Raise the Procedural Issue to Preserve the Court's Oversight of the Remand Process, Not to Add New Evidentiary Facts ..................................................................25

      2.     Commerce's Two-Day Schedule Was Not a Meaningful Remand-Comment Opportunity ..................................................................26

      3.     Commerce's Removal of the Procedural Objection Risks Creating a Self-Insulating Record ..................................................................27

      4.     At Minimum, the Court Should Reject Any Exhaustion or Waiver Argument and Require a Meaningful Remand-Comment Process ..................................................................28

V.    CONCLUSION ..................................................................28

CERTIFICATE OF COMPLAINCE ..................................................................31

CERTIFICATE OF SERVICE ..................................................................32

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agro Dutch Indus. Ltd. v. United States*,
   508 F.3d 1024 (Fed. Cir. 2007)........................................................................................28

*Biestek v. Berryhill*,
   587 U.S. 97 ......................................................................................................................14

*Burlington Truck Lines, Inc. v. United States*,
   371 U.S. 156 (1962).........................................................................................................14

*China Cornici Co., Ltd. et al. v. United States*,
   Court Nos. 23-00216 and 23-00217, Slip Op. 25-118 (Ct. Int'l Trade May 1,
   2026) .......................................................6, 7, 10, 14, 15, 16, 17, 19, 20, 22, 23, 24, 25, 26, 28

*China Cornici Co., Ltd. et al. v. United States*,
   Ct. No. 23-00216, Dkt. No. 63 (Ct. Int'l Trade Jan. 26, 2026) ...................................6

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938).........................................................................................................14

*Dongtai Peak Honey Indus. Co. v. United States*,
   777 F.3d 1343 (Fed. Cir. 2015)..................................................................................14, 27

*Goodluck India Ltd. v. United States*,
   11 F.4th 1335 (Fed. Cir. 2021) .......................................................................................14

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
   815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ...........................................................14, 21, 27

*Itochu Bldg. Prods., Co. v. United States*,
   733 F.3d 1140 (Fed. Cir. 2013)........................................................................................28

*Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States*,
   145 F.4th 1308 (Fed. Cir. 2025) .....................................................................................18

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)...........................................................................................................14

*NTN Bearing Corp. of Am. v. United States*,
   74 F.3d 1204 (Fed. Cir. 1995)..........................................................................................21

*OCP S.A. v. United States*,
   Slip Op. 25-51, 2025 WL 1837257 (Ct. Int'l Trade Apr. 22, 2025) .......................................14

*Sigma Corp. v. United States*,
   117 F.3d 1401 (Fed. Cir. 1997)..............................................................................................18

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
   298 F.3d 1330 (Fed. Cir. 2002)........................................................................................14, 19

*Tau-Ken Temir LLP v. United States*,
   147 F.4th 1363 (Fed. Cir. 2025) ......................................................................................14, 27

*Tau-Ken Temir LLP v. United States*,
   Slip Op. 25-118 ......................................................................................................................27

*Universal Camera Corp. v. NLRB*,
   340 U.S. 474 (1951)................................................................................................................14

## Statutes, Regulations, and Rules

19 C.F.R.
   § 351.104(a)(1) .......................................................................................................................27
   § 351.107(d)(1)(ii)(C) ...........................................................................................7, 9, 10, 23, 29
   § 351.213(d)(3) .......................................................................................................................10
   § 351.302(d)(2) .......................................................................................................................27

19 U.S.C.
   § 1514.................................................................................................................................9, 10
   § 1516a........................................................................................................................................9
   § 1516a(b)(1)(B)(i) .................................................................................................................14
   § 1592.....................................................................................................................9, 10, 15, 16, 17

## Administrative Decisions

*Final Determination of Sales at Less Than Fair Value: Silicon Carbide from the
   People's Republic of China*, 59 Fed. Reg. 22,585 (May 2, 1994)...........................................18

*Final Determination of Sales at Less Than Fair Value: Sparklers from the
   People's Republic of China*, 56 Fed. Reg. 20,588 (May 6, 1991)...........................................18

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE**

|  |  |
|---|---|
| CHINA CORNICI CO., LTD. ET AL., )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant. ) | Court No. 23-00216 |

**PLAINTIFFS' COMMENTS ON REMAND REDETERMINATION**

Pursuant to this Court's order of January 26, 2026,[1] Plaintiffs China Cornici Co. Ltd. ("China Cornici") and RaoPing HongRong Handicrafts Co., Ltd. ("RaoPing") (collectively "Plaintiffs"), hereby submit their comments on the Remand Redetermination filed by the Department of Commerce ("Department" or "Commerce") with the Court on May 1, 2026 (hereinafter "Redetermination").[2]

## I. INTRODUCTION

Commerce's Redetermination does not satisfy the Court's remand order. This remand returns to the same problem the Court identified in Slip Op. 25-118: Commerce treated entry-type (Type 01 regular vs. Type 03 suspended) as dispositive even though the review regulation asks whether there were actual "entries, exports, or sales" of subject merchandise during the period of

---

[1] Order, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00216, Dkt. No. 63 (Ct. Int'l Trade Jan. 26, 2026).

[2] Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00216, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026).

review.[3]  The Court held that Commerce could not rescind a review merely because entries were not shown as suspended Type 03 entries and directed Commerce to address how the prior disclosure and duty tender made to correct entry-type mistakes affect its proceedings under "all the statutes at play."[4]  The Court also remanded Commerce's refusal to apply RaoPing's separate antidumping rate to entries made through Taiwanese trading company Chen Chui Global Corp. / Chen Chiu Global Corp. (hereinafter "Chen Chiu") because Commerce's reseller regulation, 19 C.F.R. § 351.107(d)(1)(ii)(C), did not impose the separate-rate-application condition Commerce had applied.[5]

Commerce's remand results cure that error only in name. On the countervailing duty ("CVD") side, Commerce now finds what the record showed and what the Court required it to consider: China Cornici and RaoPing had period of review ("POR") entries of subject merchandise. Commerce therefore reverses its review rescission and assigns each company the non-examined company rate of 8.89 percent. But Commerce stops there. It refuses to issue assessment instructions or identify any practical remedy for the very entries under review because the entries liquidated and, in Commerce's view, only the Court can authorize reliquidation. The result is a prospective cash-deposit correction, not the review-based relief ordered by the Court.[6] CVD Remand Redetermination at 7-8, 11-12, ECF No. 65-1.

On the antidumping ("AD") side, Commerce likewise abandons rescission for China Cornici but reaches the same practical result by denying China Cornici a separate rate and

---

[3] Slip Op. 25-118, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00216, Dkt. No. 59 (Ct. Int'l Trade Sept. 5, 2026) at 4-5. ("Slip Op. 25-118")

[4] *Id.* at 10-15.

[5] *Id.* at 16-17.

[6] Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00216, Dkt. No. 65-1 (Ct. Int'l Trade May 1, 2026) at 7-8, 11-12.

assigning it to the China-wide entity. Commerce rests that conclusion almost entirely on the absence of a particular form of price-negotiation proof – pre-sale negotiation emails or a customer affidavit – even though Commerce preliminarily found the de jure criteria satisfied and at the time did not evaluate the record evidence as a whole under the de facto criteria. Commerce's approach converts a separate rate presumption into a near-irrebuttable document checklist, contrary to the substantial-evidence standard and to Commerce's own separate-rate framework.[7]

Commerce also continues to refuse to apply RaoPing's separate antidumping rate to entries involving Chen Chiu. The Court already held that Commerce's own regulation normally applies the non-market economy ("NME") exporter's separate rate to the third-country reseller's entries and that no regulation required Chen Chiu, a Taiwanese reseller, to submit its own separate-rate application absent NME government ownership. Commerce now acknowledges the reseller framework in theory but adds a new condition: the importer must have identified RaoPing as the Chinese exporter at entry. That new condition simply repackages the paperwork problem the Court rejected and is inconsistent with Commerce's own recognition that RaoPing supplied and produced the merchandise at issue.[8]

Finally, the Court should be aware of the procedure Commerce used during the remand. Commerce released both AD and CVD draft redeterminations on April 22, 2026, and set comments due at 5:00 p.m. Eastern Time on April 24, 2026, while prohibiting new factual information and rebuttal comments. On April 29, 2026, Plaintiffs submitted a procedural objection explaining that the schedule gave, at most, one usable business day to review two draft redeterminations, consult with now defunct or diminished Plaintiffs/respondents and their importer Larson-Juhl US LLC

---

[7] AD Public Remand Record ("P.R.R.") 1 at 10-13.

[8] *Id.* at 14-16; CVD Confidential Remand Record ("C.R.R.") 16 at 1-3, 7-8.

("Larson-Juhl"), and respond to new reasoning and new Customs and Border Protection ("CBP") information included in the redeterminations. Commerce rejected and removed that objection from the administrative remand record, then stated in the final remand results that no interested party filed comments. Plaintiffs raise this issue not to supplement the evidentiary record with new factual material, but to prevent Commerce from benefiting from a procedural record it created and then narrowed by filing its remand redeterminations at the 11th hour with no reasonable time to respond.[9]

For those reasons, the Court should not sustain Commerce's final remand redeterminations. A further remand should tell Commerce exactly what the prior remand required but Commerce avoided: determine the lawful duty consequences for the reviewed entries and implement them.

For the CVD remand, Commerce should be instructed to: 1) treat China Cornici's and RaoPing's POR entries as reviewable entries; 2) apply the non-examined company rate it assigned; and 3) identify and carry out the specific assessment, refund, collection, liquidation/reliquidation, or CBP-coordination steps necessary to give effect to that result and the prior-disclosure/duty-tender record. If Commerce maintains that any step is unavailable even in light of a court order, it should identify the specific statutory or regulatory bar and address the Court's prior direction to consider all statutes at play, including 19 U.S.C. §§ 1514, 1516a, and 1592.

For the AD remand, Commerce should be instructed to reconsider China Cornici's separate-rate eligibility under the full de jure/de facto record without treating the absence of a favored price-negotiation document as dispositive, and grant the company a separate rate. Commerce should also be instructed to apply RaoPing's separate antidumping rate under 19 C.F.R. § 351.107(d)(1)(ii)(C) to Chen Chui/Chen Chiu entries tied to RaoPing-produced merchandise.

---

[9] CVD Public Remand Record ("P.R.R.") 6, 4, and 3.

## II.    BACKGROUND

### A.    The Court's Remand Order

The Court held that Commerce lacked authority under 19 C.F.R. § 351.213(d)(3) to rescind administrative reviews solely because entries were not suspended. The regulation allows rescission only when there were no entries, exports, or sales of subject merchandise during the period of review. The Court expressly distinguished "entries" from "suspended entries," explaining that Commerce would have had to find no entries of subject merchandise at all.[10]

The Court further explained that liquidation does not erase the character of subject merchandise. Under 19 U.S.C. § 1592 ("Section 1592"), CBP is allowed to recover lawful duties on wrongly liquidated entries notwithstanding 19 U.S.C. § 1514's ordinary finality rule, and the lawful level of duties can only be determined through an administrative review.[11]   The Court therefore directed Commerce to consider how to adjust its proceedings when prior disclosures and deposits of duties are made to remedy mistakes on entry papers, "addressing all the statutes at play, not just unfair trade statutes and preferred practices."[12]

The Court also remanded Commerce's refusal to apply RaoPing's separate AD rate to Chen Chiu's entries. The Court held that 19 C.F.R. § 351.107(d)(1)(ii)(C) normally applies the current separate cash-deposit rate of the NME exporter to the third-country reseller's entries; that Chen Chiu's entered goods were exported by RaoPing; and that Commerce departed from the regulation without explanation by demanding a separate-rate application from the Taiwanese reseller.[13]

---

[10] Slip Op. 25-118, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00216, Dkt. No. 59 (Ct. Int'l Trade Sept. 5, 2026) at 10-12.

[11] *Id*. at 11-13.

[12] *Id*. at 15.

[13] *Id.* 16-17.

## B.     Commerce's AD Final Remand Redetermination

In the AD final remand redetermination, Commerce acknowledges that the Court directed it to reconsider the rescission of China Cornici and the refusal to apply RaoPing's rate to Chen Chiu's entries. Commerce states that it requested and examined information from China Cornici and CBP, coordinated with CBP, and further explains why RaoPing's rate could not be applied to the third-country reseller entry.[14]

Commerce ultimately determines not to rescind the AD review of China Cornici. It does so because record evidence corroborates that Larson-Juhl, as importer, took steps through a prior disclosure to correct the erroneous entry documentation and tendered monies covering duties, taxes, and penalties.

Commerce nonetheless denies China Cornici a separate rate and treats China Cornici as part of the China-wide entity.[15]  Commerce reaches that denial by finding that China Cornici did not demonstrate de facto independence, focusing on price-negotiation documentation. Commerce acknowledges evidence supporting an absence of de jure government control, but finds de facto independence unproven because China Cornici did not produce pre-sale price-negotiation emails or an unaffiliated customer affidavit, and because Commerce views price lists and invoicing-error correspondence as insufficient.[16]

For RaoPing, Commerce states that Chen Chiu is not entitled to its own separate rate because it was not under review and did not submit a separate-rate application. Commerce then says RaoPing's rate can be claimed by a non-Chinese reseller only where RaoPing was the exporter

---

[14] AD P.R.R. 1 at 1-3.

[15] *Id.* at 8-10.

[16] *Id.* at 11-13; *see also* AD C.R. 58 at Appx84639-84640, Appx84655-84659.

that supplied the merchandise and the importer correctly identifies RaoPing as the exporter at entry.[17]

### C.       Commerce's CVD Final Remand Redetermination

In the CVD final remand redetermination, Commerce reverses its rescission of the administrative review for both China Cornici and RaoPing. For China Cornici, Commerce finds that record evidence corroborates the prior disclosure/perfection route and duty tender by Larson-Juhl. Commerce assigns China Cornici the non-examined company cash-deposit rate of 8.89 percent.[18]

For RaoPing, Commerce reopened the record, issued supplemental questionnaires, and ultimately recognized that RaoPing's documentation establishes RaoPing as the Chinese manufacturer of the subject merchandise for the entry at issue. Commerce specifically notes internal invoice and production records, customs-declaration packing lists, import-security documents, shipping records, forwarder instructions, shipping orders, container/seal documentation, and Chen Chiu commercial invoice and packing-list documents tying the shipment to the entry.[19]

Commerce assigns RaoPing the same non-examined company CVD cash-deposit rate of 8.89 percent. But for both China Cornici and RaoPing, Commerce refuses to issue assessment instructions because it believes the entries liquidated and states that Commerce lacks authority to reliquidate entries and only the Court can order such reliquidation.[20]

---

[17] AD P.R.R. 1 at 14-16.

[18] CVD P.R.R. 1 at 7-8.

[19] CVD C.R.R. 1 at 9-11; CVD C.R.R. 9-16.

[20] CVD P.R.R. 1 at 8, 11-12.

**D.    Commerce's Draft-Comment Schedule and Removal of Plaintiffs' Procedural Objection**

Commerce released both draft redeterminations on April 22, 2026, and set comments due by 5:00 p.m. Eastern Time on April 24, 2026. The drafts stated that interested parties could not submit new factual information and would have no rebuttal-comment opportunity.[21]

On April 29, 2026, Plaintiffs filed a procedural objection explaining that Commerce's schedule did not provide a meaningful opportunity to comment. The objection emphasized that the schedule left at most two calendar days, and practically one full business day, to review two draft redeterminations, analyze new reasoning, consult with company personnel and Larson-Juhl, review the remand record, and prepare comments that could assist Commerce and preserve the issues for judicial review.[22]

Commerce rejected and removed that objection, stating that it contained untimely argument and new factual information without further explanation. Plaintiffs then on April 30 filed a response explaining that the April 29 filing was not a substantive comment submission, not a questionnaire response, and not new factual information, but rather a procedural objection to the adequacy of the comment opportunity and Commerce's rejection rationale.[23] Commerce removed that response from the record as well.

## III.    STANDARD OF REVIEW

The Court must hold unlawful any determination, finding, or conclusion by Commerce that is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

---

[21] CVD C.R.R. at 4, 3, and 2.

[22] Objection to Deadline for Comments, April 29, 2026 (Commerce ACCESS Barcode 4916928-01 and 4916930-01).

[23] CVD P.R.R. 3-5.

19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938); *see also Biestek v. Berryhill,* 587 U.S. 97, 103(2019). The Court reviews the record as a whole, including evidence that supports the agency's determination and evidence that fairly detracts from it. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002).

Commerce must consider important information in the record and explain the connection between the facts found and the choices made.[24]  *OCP S.A. v. United States*, Consol. Court No. 1:21-CV-00219 (SAV), 2025 WL 1837257, at *11 (Ct. Int'l Trade Apr. 22, 2025). An agency decision is arbitrary where the agency fails to examine relevant data, fails to consider an important aspect of the problem, or offers an explanation that does not rationally connect the facts to the result. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

Commerce has discretion to manage deadlines, but deadline enforcement and rejection of submissions are reviewed for abuse of discretion. *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1342 (Fed. Cir. 2021); *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1351-53 (Fed. Cir. 2015). The Federal Circuit has recognized that the relevant considerations include the remedial purpose of the trade laws, the interest in accurate determinations, the burden on Commerce, finality, and the party's efforts and reasons. *Tau-Ken Temir LLP v. United States*, 147 F.4th 1363, 1373-74 (Fed. Cir. 2025) (discussing *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012)).

---

[24] Slip Op. 25-118, *supra* note 3, at 14-15.

IV.    **ARGUMENT**

A.    **Commerce Did Not Comply with the Court's Remand Because It Again Allows Entry Documentation Formalities to Defeat the Review and Relief the Court Ordered**

The Court rejected precisely the formalism Commerce again relies on. The Court's remand opinion is explicit: "mislabeled paperwork is not enough to meet the substantial evidence standard," and Commerce "cannot fall back on the internal procedures of another agency of the United States while closing its eyes to mountains of other evidence."[25]  Commerce was ordered to address how prior disclosures and duty deposits should affect its proceedings, considering all statutes at play and not merely "preferred practices."[26]

Commerce's final remand analysis does not meet that instruction. Instead, Commerce describes three CBP mechanisms - post-summary correction ("PSC"), protest, and prior disclosure - and then effectively treats the failure to pursue the mechanism Commerce now prefers as dispositive of whether meaningful relief can be implemented. Commerce emphasizes that a prior disclosure does not itself change entry type from Type 01 to Type 03, does not suspend liquidation, and is not an "avenue" for correcting entries for further assessment.[27]

That may describe CBP's operational mechanics, but it does not answer the legal question the Court remanded. The issue is not whether Larson-Juhl filed the perfect CBP procedural document; it is whether entries of subject merchandise existed, whether duties were tendered in connection with those entries, and how Commerce must determine lawful duties where the importer attempted to remedy entry-paper errors through Section 1592 prior disclosure. The Court

---

[25] Slip Op. 25-118, *supra* note 3, at 15.

[26] *Id.*

[27] AD P.R.R. 1 at 6-8; CVD P.R.R. 1 at 5-7.

held that the statutory scheme suggests Commerce will conduct reviews for entities in Plaintiffs' position because the "lawful" duties recoverable under Section 1592 can be determined only through administrative review.[28]

Commerce's final remand response turns that reasoning on its head. It concedes reviewable entries on the CVD side and non-rescission for China Cornici on the AD side but then refuses to provide any assessment path for liquidated entries and uses entry-paper mechanics to limit RaoPing's AD relief. Commerce has therefore complied with the Court's holding in form while preserving the same practical consequences that prompted remand.

### B. Prior Disclosure and Duty Tender Were Not Irrelevant Simply Because a PSC Was Not Filed

The record evidence confirms that Larson-Juhl did not simply ignore the AD/CVD orders or attempt to avoid duties. Larson-Juhl submitted a prior disclosure to CBP covering entries of subject merchandise, perfected that disclosure, tendered an official check covering duties, taxes, and fees in connection with the disclosure, and requested that unliquidated entries be reset to Type 03 and suspended pending Commerce's instructions.[29]

Commerce acknowledges that record evidence corroborates China Cornici's claims that steps were taken with CBP to rectify the entry documentation and that monies were tendered to CBP covering amounts due for subject merchandise, plus taxes and penalties.[30]  Commerce also acknowledges that the prior disclosure was filed before liquidation of at least one entry in the AD review.[31]

---

[28] Slip Op. 25-118, *supra* note 3, at 11-13.

[29] AD C.R.R. 3-7; CVD C.R.R. 5-8.

[30] AD P.R.R. 1 at 8; CVD P.R.R. 1 at 7.

[31] *See* Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00217, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 8.

Those facts matter under the Court's remand. Section 1592 allows restoration of lawful duties notwithstanding liquidation finality, and the Court observed that the government can retain duties tendered through a prior disclosure only if those rates are lawful as applied.[32]  Commerce's insistence that only a PSC or protest would have changed the entry's administrative status does not answer whether Commerce, in its own remand proceedings, must determine and implement lawful duties for subject entries that the importer disclosed and paid.

C.    Commerce's "Cash Deposit Only" CVD Remedy is Incomplete

Commerce's CVD redetermination reverses rescission of the review and assigns China Cornici and RaoPing the non-examined company rate but then states it will not issue assessment instructions because the entries liquidated and Commerce lacks authority to reliquidate.[33]   This fails to resolve the core statutory problem identified by the Court: the government may retain only lawful duties, and the lawful level of duties can be determined only after administrative review.[34]

At minimum, Commerce was required to explain how its remand determination will be implemented with respect to the subject entries and prior-disclosure tender. A cash deposit rate for future entries alone does not determine the lawful duties on the entries that gave rise to this litigation. If Commerce believes that only the Court can authorize reliquidation or refund relief, Commerce should have identified the precise statutory mechanism and the instructions necessary to implement the Court's judgment, rather than disclaiming authority and leaving the subject entries unresolved.

---

[32] Slip Op. 25-118, *supra* note 3, at 11-13.

[33] *See* Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00216, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 11-12.

[34] Slip Op. 25-118, *supra* note 3, at 11-13.

The Court should therefore remand the CVD redetermination with instructions that Commerce either issue appropriate assessment/liquidation instructions consistent with the Court's judgment or provide a legally complete implementation path, in coordination with CBP, that determines and gives effect to the lawful duties on the entries tied to China Cornici and RaoPing.

**D.    Commerce's Denial of a Separate Rate to China Cornici Is Unsupported by Substantial Evidence and Not in Accordance with Law**

**1.    Commerce Treated One Category of Pricing Documentation as Dispositive, Rather Than Applying the Required Separate-Rate Analysis**

Commerce's NME presumption is a rebuttable evidentiary presumption. *Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States*, 145 F.4th 1308, 1316 (Fed. Cir. 2025). Commerce may presume government control in an NME proceeding, but that presumption does not relieve Commerce of its obligation to evaluate the evidence actually placed on the record and determine whether the respondent's export activities are independent under the applicable criteria.

Commerce's separate-rate framework looks to both de jure and de facto independence. For de facto independence, Commerce considers whether the company establishes export prices independent of the government; whether it has authority to negotiate and sign contracts; whether it has autonomy over management selection; and whether it retains proceeds and controls export revenue. *See Final Determination of Sales at Less Than Fair Value: Sparklers from the People's Republic of China*, 56 Fed. Reg. 20,588 (May 6, 1991); *Final Determination of Sales at Less Than Fair Value: Silicon Carbide from the People's Republic of China*, 59 Fed. Reg. 22,585 (May 2, 1994); *Sigma Corp. v. United States*, 117 F.3d 1401, 1405-06 (Fed. Cir. 1997).

Commerce's final remand redetermination collapses this multi-factor analysis into a single evidentiary demand. Commerce preliminarily accepts that China Cornici's record supports an

18

absence of de jure government control.[35]   But Commerce denies de facto independence because China Cornici did not locate pre-sale price-negotiation emails or provide an unaffiliated customer affidavit.[36]

That is an unlawful narrowing of the separate-rate inquiry. The question is not whether China Cornici submitted the precise documents Commerce now prefers; it is whether the record as a whole demonstrates government control over China Cornici's export activities or, conversely, independence from such control. Commerce must consider important and detracting evidence, not select one perceived documentary gap and treat it as dispositive. Slip Op. 25-118, *supra* note 3, at 14-15; *See Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330 (Fed. Cir. 2002) at 1335.

### 2.    Commerce Ignored or Discounted Evidence That Detracts from Its China-wide Conclusion

The remand record contains evidence that Commerce did not reasonably weigh. China Cornici submitted a separate-rate application, business-license and ownership materials, transactional documents, pricing documents, invoice materials, and remand supplemental responses. Commerce's own analysis recognizes evidence supporting de jure independence, including the absence of restrictive stipulations and formal measures decentralizing control. *See* China Cornici's Letter, "Separate Rate Application," dated May 16, 2022 (China Cornici's SRA); *See* Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00217, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 11,

---

[35] *See*e Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00217, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 11.

[36] *See* Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00217, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 11-13.

Rather than evaluate the totality of export-function evidence, Commerce focuses narrowly on the absence of pre-sale negotiation emails. But a company may set export prices independently even where the customer accepts an offered price without prolonged email negotiation or where the available record reflects price lists, invoices, purchase orders, post-sale invoice adjustments, and ordinary commercial correspondence. Commerce offers no reasoned explanation why the documents China Cornici did provide could not show independent pricing behavior or why the absence of one specific documentary form establishes government control.

Commerce's adverse characterization of China Cornici's response as a "misrepresentation" is also unsupported. China Cornici responded to Commerce's multiple remand questionnaires, clarified its ownership, acknowledged the limits of available pre-sale emails years after the transaction, and provided the documents it could locate. A record gap caused by the age of the transaction and the practical condition of the company is not affirmative evidence of government control. Nor does ongoing litigation over one transaction make it reasonable to assume that every pre-sale commercial email remains available years later.

### 3. Commerce Did Not Give China Cornici a Fair Chance to Address the Specific Affidavit Theory Commerce Used Against It

Commerce states that its separate-rate application allows a respondent without independent price-negotiation documentation to submit an unaffiliated customer affidavit.[37]  But Commerce did not identify the absence of such an affidavit as a curable deficiency during the underlying review in a way that gave China Cornici a meaningful opportunity to submit one. Nor did Commerce provide a meaningful draft-comment opportunity after introducing its draft redetermination.

---

[37] *See* Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00217, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 12.

The result is particularly unfair because Commerce did not conduct a separate-rate analysis in the original final results after rescinding China Cornici; Commerce performed that analysis for the first time on remand. If Commerce intended to deny a separate rate based on a new, specific affidavit theory, it was required to provide a fair opportunity to address the deficiency, particularly where the Court had remanded to cure Commerce's prior unlawful rescission and the administrative consequence was the punitive China-wide rate.

Commerce's approach undermines the remedial purpose of the trade laws and the statutory interest in accurate duty determinations. *See Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012); *See NTN Bearing Corp. of Am. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995). The Court should remand with instructions that Commerce evaluate the entire separate-rate record under all de facto criteria and, if the Court views a specific affidavit or document as necessary, Commerce needs to provide China Cornici a meaningful opportunity to address that deficiency.

> 4. **The Appropriate Remedy is Either Entry of China Cornici's Separate Rate or a Narrowly Instructed Remand**

Because Commerce's denial rests on an incomplete and overly rigid analysis, the Court should hold that Commerce's China-wide determination for China Cornici is unsupported by substantial evidence and not in accordance with law. The Court should either direct Commerce to grant China Cornici a separate rate based on the existing record or, at minimum, remand with instructions to apply the proper totality-of-the-record standard, address each de facto criterion, consider all evidence detracting from the China-wide conclusion, and provide a meaningful opportunity for comment before issuing a new remand determination.

> E. **Commerce's Refusal to Apply RaoPing's Separate Rate to the Chen Chiu Entries Remains Contrary to the Regulation and the Court's Remand Order**
>
> 1. **Commerce Conceded the Relevant Commercial Chain**

The record establishes the commercial chain for the entry at issue: RaoPing produced the merchandise; the goods moved through a downstream trading chain involving Chen Chiu as exporter/trading company; and Larson-Juhl entered the merchandise in the United States.[38]

Commerce's CVD remand findings confirm this chain. Commerce acknowledges that RaoPing provided documentation establishing RaoPing as the Chinese manufacturer of subject merchandise for the POR entry; that the documentation ties Chen Chiu as exporter and reseller; that internal invoice and production records tie to commercial packing lists, shipping documents, and the entered merchandise; that ISF and shipping records identify RaoPing, Guangdong, China as the manufacturing and stuffing location; and that commercial invoice and packing-list information ties to the entry.[39]

The Importer Security Filing similarly identifies the container, bills of lading, Larson-Juhl as importer, Chen Chiu as seller, the container stuffing/manufacturer location in Raoping, Guangdong, China, and the product as picture frame finish moulding under HTSUS 4421.99.9780.[40]

Thus, the factual premise is not genuinely in dispute. RaoPing produced and supplied the merchandise. Chen Chiu was the reseller/exporter/trading company. The question is whether Commerce may deny RaoPing's rate based on how the entry documentation identified the exporter. The Court's remand opinion answered "no" unless Commerce can identify a missing legally required step consistent with its regulations.

---

[38] CVD C.R.R. 9-16.

[39] Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00216, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 10-11.

[40] CVD C.R.R. 10-11.

### 2. The Regulation Applies RaoPing's Rate to Third-Country Reseller Entries

The governing regulation provides that if an entity with a separate antidumping rate in an NME sells goods through a third-country reseller, Commerce will normally apply the current separate cash-deposit rate applicable to the NME exporter to the reseller's entries of subject merchandise. 19 C.F.R. § 351.107(d)(1)(ii)(C). The Court applied that regulation directly, holding that Chen Chiu's goods were exported by RaoPing and that RaoPing was eligible for a separate rate.[41]

Commerce's final remand does not identify a lawful exception to that rule. Commerce repeats that Chen Chiu did not submit its own separate-rate application and that it would be improper to assign Chen Chiu its own separate rate. But Plaintiffs are not asking for a separate rate for Chen Chiu. Plaintiffs seek application of RaoPing's already granted separate rate to entries of RaoPing-produced merchandise sold through Chen Chiu. The Court already rejected Commerce's attempt to demand a separate-rate application from Chen Chiu under these facts. *Id*. at 16-17.

Commerce's concern about a loophole is also misplaced. Applying RaoPing's rate to entries proven to involve RaoPing-produced merchandise does not allow Chen Chiu to resell merchandise from any supplier at RaoPing's rate. It simply implements the regulation for the particular entries tied to RaoPing. If Chen Chiu sells merchandise from a different Chinese exporter, that exporter's rate or the China-wide rate may apply depending on the record. But that hypothetical does not justify denying RaoPing's rate to the documented RaoPing merchandise at issue here.

---

[41] Slip Op. 25-118, *supra* note 3, at 16.

> **3.    Commerce's New "Identified RaoPing on the Entry Summary" Condition is Extra-Regulatory and Recreates the Error the Court Rejected**

Commerce now states that, for RaoPing's assessment rate to apply, the importer must have identified RaoPing as the Chinese exporter when filing the entry summary.[42]  Commerce offers this requirement as the "missing step" the Court asked it to spell out. But Commerce identifies no regulation, statute, initiation notice, separate-rate instruction, or cash-deposit instruction that made this entry-summary label a legal prerequisite to applying the NME exporter's rate to reseller entries.

To the contrary, Commerce's own cash-deposit hierarchy, quoted in the final remand redetermination, provides that for non-Chinese exporters of subject merchandise that have not received their own separate rate, the cash-deposit rate is the rate applicable to the Chinese exporter that supplied the non-Chinese exporter.[43]  The relevant question is the supplier/exporter identity in substance, not whether the entry paperwork used the correct label. The Court already held that Commerce may not close its eyes to overwhelming evidence because of mislabeled entry paperwork.

Commerce's new requirement would make relief turn on the same entry-document error that led to the remand. If an importer's failure to list RaoPing in a particular field is enough to deny RaoPing's rate despite overwhelming evidence that RaoPing produced and supplied the merchandise, then Commerce's remand explanation does not comply with the Court's instruction. It merely chooses a different label for the same paper-based denial.

---

[42] *See* Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00217, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 15.

[43] *See* Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00217, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 15-16.

24

Commerce's position is especially problematic because third-country reseller structures routinely involve commercial documents identifying the reseller as seller/exporter to the U.S. customer while the NME producer/exporter supplies the goods. That is exactly why the regulation addresses reseller entries. Commerce cannot make the regulation inapplicable whenever the reseller appears on entry paperwork; doing so would swallow the reseller rule.

### 4. The Court Should Direct Commerce to Apply RaoPing's Separate AD Rate to the Chen Chiu Entries Tied to RaoPing-produced Merchandise

The record contains the evidence Commerce said it needed to trace the entry to RaoPing. Commerce conceded that evidence in the CVD remand and did not undermine it in the AD remand. The Court should therefore remand with instructions that Commerce apply RaoPing's separate antidumping rate to the Chen Chiu / Chen Chiu entries tied to RaoPing-produced merchandise, including the Larson-Juhl entries and any other record entries for which the same chain is established.

### F. Commerce's Compressed Draft-Comment Schedule and Removal of Plaintiffs' Procedural Objection Confirm That Further Remand Is Appropriate

#### 1. Plaintiffs Raise the Procedural Issue to Preserve the Court's Oversight of the Remand Process, Not to Add New Evidentiary Facts

Plaintiffs recognize the risk that Commerce may argue the April 29 procedural objection is not part of the administrative record because Commerce removed it. Plaintiffs therefore frame this argument carefully. The Court need not consider the objection as new factual evidence supporting the merits of China Cornici's or RaoPing's entries. Rather, the issue is part of the procedural history of the remand proceeding itself, and Commerce's final remand redeterminations expressly refer to the rejected filing and rely on the resulting absence of comments.[44]

---

[44] S*ee* Final Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00217, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 2; *See* Final

The Court has authority to consider whether a remand proceeding conducted under its order provided a meaningful opportunity for parties to respond, and whether Commerce may invoke exhaustion, waiver, or the absence of draft comments after Commerce created a compressed comment window and removed the procedural objection to that window. If the Court views the April 29 and April 30 filings as outside the remand administrative record, Plaintiffs respectfully request leave to submit them for the limited purpose of documenting the remand procedure and preserving the procedural objection.

### 2. Commerce's Two-Day Schedule Was Not a Meaningful Remand-Comment Opportunity

Commerce issued two draft remand redeterminations on April 22, 2026 and required comments by 5:00 p.m. Eastern Time on April 24, 2026. It prohibited new factual information and provided no rebuttal opportunity.[45] This occurred after Commerce reopened the record, issued multiple supplemental questionnaires, obtained CBP information, placed record materials near the end of the remand period, and introduced new reasoning in the draft determinations. Commerce essentially ran out the clock for a meaningful response by Plaintiffs.

That schedule was particularly prejudicial because the remand required coordination among counsel, China Cornici, RaoPing, and Larson-Juhl on years-old entry, prior-disclosure, liquidation, and reseller documentation. RaoPing is no longer operating and China Cornici is operating in a materially diminished capacity. Commerce's schedule gave Plaintiffs only a symbolic opportunity to comment on determinations that would return to the Court for review.

---

Results of Redetermination Pursuant to Court Remand, *China Cornici Co., Ltd. et al. v. United States*, Ct. No. 23-00216, Dkt. No. 65 (Ct. Int'l Trade May 1, 2026) at 2.

[45] AD P.R.R. 7; CVD P.R.R.7;  *See* Draft Results of Remand Redetermination, *China Cornici Co., Ltd., and RaoPing HongRong Handicrafts Co., Ltd. v. United States*, Court Nos. 23-00216 and 23-00217, Slip. Op. 25-118 (CIT 2025), dated April 22, 2025 (Draft Redetermination).

The Federal Circuit's recent decision in *Tau-Ken* confirms that Commerce's deadline enforcement must be evaluated in context. Commerce's interest in finality does not automatically override accuracy and fairness, particularly where the burden of a short extension or acceptance of a procedural objection is minimal and the consequence to a respondent is severe. *Tau-Ken Temir LLP v. United States*, Slip Op. 25-118, *supra* note 3, at 16–20; *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1365–67 (CIT 2012).  This case is not *Dongtai Peak*, where the respondent had a meaningful opportunity and failed to comply. Here, Plaintiffs objected that the opportunity itself was not meaningful.

### 3.    Commerce's Removal of the Procedural Objection Risks Creating a Self-Insulating Record

Commerce rejected the April 29 objection as untimely argument and new factual information, but did not identify the specific offending page, paragraph, sentence, or clause. Plaintiffs' April 30 response explained that the objection did not submit exhibits, did not seek to supplement the evidentiary record, and did not request a substantive change based on new facts. It preserved a procedural objection to the adequacy of the comment period.[46]

Commerce's regulations require the official record to include written argument or other material presented to the Secretary during a proceeding that pertains to the proceeding. 19 C.F.R. § 351.104(a)(1). If Commerce rejects untimely material, it must provide written notice stating the reasons for rejection to the extent practicable. 19 C.F.R. § 351.302(d)(2). A generic statement that a filing contains new argument or new factual information, without identifying the allegedly improper material, is inadequate and leaves the Court without a fair account of the remand procedure.

---

[46] *See* CVD P.R.R. 3-5.

The sequence matters: Commerce issued draft remand results near the end of the remand period; gave one usable business day for comments; barred new factual information and rebuttal; rejected Plaintiffs' procedural objection; removed that objection; and then reported that no interested party filed comments. That procedure should not be allowed to become a shield against judicial review.

### 4. At Minimum, the Court Should Reject Any Exhaustion or Waiver Argument and Require a Meaningful Remand-Comment Process

Plaintiffs therefore respectfully request that the Court reject any argument that Plaintiffs waived their objections or failed to exhaust administrative remedies by not filing substantive draft comments within Commerce's inadequate window. Plaintiffs attempted to preserve the procedural issue and were met with rejection and removal. The Court has already excused exhaustion for pure questions of law in this litigation, and the present procedural issue concerns Commerce's compliance with the Court's remand order and its administration of the remand process Slip Op. 25-118, *supra* note 3, at 6-8*; Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007); *Itochu Bldg. Prods., Co. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013).

If the Court remands, it should instruct Commerce to provide a meaningful opportunity for comments on any draft redetermination, identify specific deficiencies before rejecting procedural filings, and include in the remand record any written objection or response that pertains to the remand process.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court decline to sustain Commerce's final remand redeterminations and further remand with instructions that:

1.    Commerce and U.S. Customs and Border Protection ("CBP"), shall determine and implement the lawful duty consequences for the reviewed entries, including by

28

correcting assessment, liquidation, and reliquidation instructions and by correcting entries that liquidated at rates inconsistent with the corrected results; and

2.    In the countervailing duty ("CVD") remand (case # 23-00216), Commerce shall treat period-of-review entries from China Cornici Co. Ltd. ("China Cornici") and RaoPing HongRong Handicrafts Co., Ltd. ("RaoPing") as reviewable entries, apply to those entries the non-examined company rate of 8.89 percent, and issue corrected assessment, liquidation, and/or reliquidation instructions for those entries; and

3.    Pursuant to Commerce's corrected instructions, CBP shall liquidate or reliquidate each affected CVD entry at the corrected rate, refund or credit any excess cash deposits, prior-disclosure tenders, duties, interest, taxes, fees, penalties, or other amounts paid or tendered to the extent they exceed the lawful amount due, and collect any lawful deficiency, with interest as provided by law; and

4.    In the antidumping ("AD") remand (case # 23-00217), Commerce shall grant China Cornici separate-rate status, determine and apply China Cornici's lawful separate rate, and issue corrected assessment, liquidation, and/or reliquidation instructions for China Cornici's affected entries; and

5.    In the AD remand, Commerce shall apply 19 C.F.R. § 351.107(d)(1)(ii)(C) to entries of RaoPing-produced merchandise sold through Chen Chiu Global Corp. / Chen Chiu Global Corp., including the Larson-Juhl entries and any other entry established by the remand record, and shall issue corrected assessment, liquidation, and/or reliquidation instructions directing CBP to apply RaoPing's separate antidumping rate to those entries; and

29

6.    Pursuant to Commerce's corrected instructions, CBP shall liquidate or reliquidate China Cornici's affected AD entries and the affected RaoPing/Chen Chiu entries at the corrected AD rates, refund or credit any excess deposits or duties, and collect any lawful deficiency, with interest as provided by law; and

7.    Commerce and CBP shall not deny the foregoing corrections, assessment instructions, liquidation, reliquidation, refunds, credits, or collections solely because affected entries were entered as Type 01 rather than Type 03 entries, already liquidated or deemed liquidated, did not identify RaoPing in a particular entry-summary field, or involved a third-country reseller that did not submit its own separate-rate application.

Respectfully submitted,

/s/ Mark R. Ludwikowski
Mark Ludwikowski
R. Kevin Williams
Kelsey Christensen

Clark Hill PLC
*Counsel to Plaintiffs*

30

**CERTIFICATE OF COMPLIANCE**

I certify that this submission complies with the applicable word-count limitation for comments after remand. Based on the word-count feature of Microsoft Word, and excluding the portions exempted by the Court's rules and chambers procedures, this brief contains 6,717 words.

/s/ Mark Ludwikowski
Mark Ludwikowski

31

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was electronically filed on June 1, 2026, via the Court's ECF filing system, which automatically serves notice on counsel of record.

/s/ Mark Ludwikowski

Mark Ludwikowski

*Counsel to China Cornici Co., Ltd. and RaoPing HongRong Handicrafts Co. Ltd. (d.b.a. Chen Chiu Global Corp.)*

Dated: June 1, 2026