**Slip Op. 26-118**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| CHINA CORNICI CO., LTD. and RAOPING HONGRONG HANDICRAFTS CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Before: Jane A. Restani, Judge<br><br>Court Nos. 23-00216 & 23-00217<br><br>**Public Version** |

**OPINION**

Dated: September 23, 2026

[Sustaining Commerce's final results of redetermination pursuant to court remand.]

Mark Rett Ludwikowski, Clark Hill PLC, of Washington, DC, for plaintiffs China Cornici Co., Ltd. and RaoPing HongRong Handicrafts Co., Ltd. Also on the brief were Kelsey Christensen of Washington, DC and Robert Kevin Williams of Chicago, IL.

Catherine M. Yang, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant. Of counsel on the brief was Joshua Paul Angelo, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, and Leslie Mae Lewis, U.S. Department of Commerce, of Washington, DC.

Restani, Judge: Before the court are Commerce's final results of redetermination pursuant to court remand in the administrative review of the countervailing duty ("CVD") and antidumping duty ("AD") orders on wood mouldings and millwork products from the People's Republic of China ("China"). See Wood Mouldings and Millwork Products from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2020–2021, 88 Fed. Reg. 62,319 (Dep't Commerce Sep. 11, 2023) ("Final Countervailing Duty Results"); Wood Mouldings and Millwork Products from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; Final Determination of No Shipments; and

Partial Rescission; 2020–2022, 88 Fed. Reg. 62,539 (Dep't Commerce Sep. 12, 2023) ("Final Antidumping Duty Results") (together with the Final Countervailing Duty Results, the "Final Results"); Final Results of Redetermination Pursuant to Court Remand, Court No. 23-216, ECF No. 66-1 (May 1, 2026) ("CVD Remand Results"); Final Results of Redetermination Pursuant to Court Remand, Court No. 23-217, ECF No. 59-1 (May 1, 2026) ("AD Remand Results") (together with CVD Remand Results, the "Remand Results").

Plaintiffs China Cornici Co., Ltd. ("China Cornici") and RaoPing HongRong Handicrafts Co., Ltd. ("RaoPing") (together with China Cornici, "Plaintiffs") request that the court hold aspects of the Remand Results unsupported by substantial evidence or otherwise not in accordance with law. The United States ("the government") asks that the court sustain Commerce's Remand Results in both reviews at issue. This case concerns the limits of available relief where a party has made good-faith efforts to correct errors in entry documentation but has failed to ensure the suspension of, or protest, liquidation for the entries at issue.

For the following reasons, the court sustains the Remand Results.

## BACKGROUND

The court assumes familiarity with the facts of this case, as set forth in its prior opinion ordering remand to Commerce. See China Cornici Co. v. United States, 799 F. Supp. 3d 1373 (CIT 2025) ("China Cornici I"). It recounts here only those facts pertinent to the issues raised on remand. On September 11 and 12, 2023, Commerce issued the final results of its administrative reviews of countervailing and antidumping duties on wood moulding and millwork products from China. See Final Countervailing Duty Results; Final Antidumping Duty Results. In the Final Countervailing Duty Results, Commerce assigned China Cornici and RaoPing the China-wide countervailing duty rate. See Final Countervailing Duty Results at 62,320–22. In the Final

Antidumping Duty Results, Commerce assigned China Cornici the China-wide antidumping duty rate of 220.87% and RaoPing a separate antidumping rate of 0.00%. See Final Antidumping Duty Results at 62,540–42.

Commerce assigned China Cornici the China-wide rate in both reviews because it determined that the company lacked suspended entries of subject merchandise during the applicable period of review ("POR"). Wood Mouldings and Millwork Products from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the 2020-2021 Countervailing Duty Administrative Review at 35–38 (Dep't Commerce Sep. 1, 2023) ("Countervailing Duty IDM"); Wood Mouldings and Millwork Products from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the 2020-2022 Antidumping Duty Administrative Review at 39–40 (Dep't Commerce Sep. 5, 2023) ("Antidumping Duty IDM"). China Cornici lacked the necessary suspended entries because it mislabeled its entries, causing U.S. Customs and Border Protection ("Customs") to liquidate entries of subject merchandise without collecting cash deposits. Countervailing Duty IDM at 36–38; Antidumping Duty IDM at 39–40. Commerce also rescinded its review of RaoPing in the agency's CVD proceeding for a lack of suspended entry. See Countervailing Duty IDM at 36–38. Commerce, however, as indicated granted RaoPing a separate rate in its AD review. Antidumping Duty IDM at 36. RaoPing requested that Commerce apply this separate rate to entries from Chen Chiu Global Corporation ("Chen Chiu"), the Taiwanese company that sold RaoPing's merchandise in the United States. See id. at 35. Commerce refused RaoPing's request because Chen Chiu was not reviewed under the same antidumping duty administrative review and did not submit its own application for a separate rate. Id. at 36–37.

In China Cornici I, the court held that Commerce lacked the authority to rescind the

administrative reviews solely due to a lack of suspended entries and that Commerce ignored overwhelming record evidence showing entries of subject merchandise during the POR. 799 F. Supp. 3d at 1381–83. The court further held that Commerce unreasonably denied Chen Chiu a separate rate because it departed, without explanation, from the language of 19 C.F.R. § 351.107(d)(1)(ii)(C).[1] Id. at 1384. The court remanded to Commerce to "reconsider its determinations (1) to rescind the administrative reviews for China Cornici and RaoPing, and (2) to refuse to apply RaoPing's separate antidumping duty rate to Chen Chiu's entries." Id. at 1384–85.

On remand, Commerce reopened the record and solicited additional information from both Plaintiffs and Customs. See CVD Remand Results at 2; AD Remand Results at 2–3. In the CVD Remand Results, Commerce determined not to rescind its administrative review with respect to China Cornici and RaoPing. CVD Remand Results at 7, 11. It thus assigned both companies the CVD cash deposit rate of the non-examined companies under review rate, i.e., 8.89% for the 2021 POR. Id. at 7–8, 11. Commerce, however, refused to issue assessment instructions to Customs to assess countervailing duties on China Cornici's and RaoPing's POR entries because those entries had already been liquidated. Id. at 8, 11. Commerce explained that it "lacks the authority to reliquidate entries and only the [c]ourt can do so." Id.

In the AD Remand Results, Commerce likewise determined not to rescind its administrative review with respect to China Cornici. See AD Remand Results at 2. Commerce determined that China Cornici was not eligible for a separate rate and thus assigned it the China-

---

[1] If an entity with a separate antidumping duty rate in a nonmarket economy sells goods through a third-country reseller, Commerce "will normally instruct U.S. Customs and Border Protection to apply the current separate cash deposit rate applicable to the nonmarket economy country exporter . . . that supplied the subject merchandise to the reseller to those entries of the subject merchandise." 19 C.F.R. § 351.107(d)(1)(ii)(C).

wide rate. Id. at 13. Commerce further determined that Chen Chiu was ineligible for a separate rate but determined that Chen Chiu may claim RaoPing's separate cash deposit rate for future shipments of subject merchandise exported by RaoPing. See id. at 14–15. As with the CVD Remand Results, Commerce determined that it lacked the authority to order reliquidation for those entries at issue during the POR. See id. at 13; CVD Remand Results at 8, 11.

On June 1, 2026, China Cornici and RaoPing filed their comments on the Remand Results. Pls.' Comments on Remand Redetermination, Court No. 23-216, ECF No. 69 (June 1, 2026) ("Pls. Cmts.").[2] On July 16, 2026, the government filed its response thereto. Def.'s Resp. to Comments on Remand Redetermination, ECF No. 73 (July 16, 2026) ("Gov. Resp.").

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2). The court will uphold Commerce's determinations in countervailing and antidumping duty reviews unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Crawfish Processors All. v. United States, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." U.S. Steel Corp. v. United States, 219 F. Supp. 3d 1300, 1307 (CIT 2017) (citation modified) (citation omitted).

---

[2] Where filings in the dockets for Court Nos. 23-216 and 23-217 are materially similar, the court cites only to the docket entries in Court No. 23-216. Unless indicated, all ECF numbers listed are those in Court No. 23-216.

## DISCUSSION

### I. The Court Will Address Plaintiffs' Comments on the Remand Results

At the threshold, the court addresses whether China Cornici and RaoPing waived their arguments by failing to exhaust their administrative remedies. In their comments, Plaintiffs object to Commerce's truncated deadline to submit comments on the draft remand results and subsequent decision to reject as untimely Plaintiffs' April 29, 2026 and April 30, 2026 objections. Pls. Cmts. at 25–28; see Letter from Clark Hill PLC to Sec of Commerce Pertaining to Respondents (Rejected) Objection to Deadline for Cmts, AD P.R.R. 6 (Apr. 29, 2026) ("April 29 Objection"); Letter from Clark Hill PLC to Sec of Commerce Pertaining to Respondents Objection to Removal of Document, AD P.R.R. 3 (Apr. 30, 2026) ("April 30 Objection").[3] They argue that the compressed schedule denied them an opportunity to meaningfully respond and preemptively ask the court to reject any resultant exhaustion argument, or otherwise grant them leave to submit their objection on the record. Pls. Cmts. at 25–28.

Sure enough, the government advances a waiver argument in its response. See Gov. Resp. at 9–17. Specifically, it argues that neither plaintiff filed comments to set forth their objections to the draft remand results at the administrative level, such that Commerce could not consider their arguments and potentially change its determinations. Id. at 10. It adds that Plaintiffs failed to timely request an extension before the agency. Id. at 14. The government further argues that Commerce reasonably rejected Plaintiffs' objections that were filed five days after the comment deadlines. Id. at 11–12.

---

[3] The parties' joint appendices contain the record for both the CVD Remand Results and the AD Remand Results. See Confidential Joint App., ECF No. 74 (July 30, 2026); Public Joint App., ECF No. 75 (July 30, 2026). Where the documents submitted as part of the record for both Remand Results are materially similar, the court cites only to one record document.

"The prescribed avenue for challenging remand results requires that a party first file comments on the draft results at the administrative level, setting forth the party's objections." Taian Ziyang Food Co. v. United States, 37 CIT 947, 963, 918 F. Supp. 2d 1345, 1361 (2013). Commerce has "broad discretion" to establish its own rules governing the establishment and enforcement of time limits. Yantai Timken Co. v. United States, 31 CIT 1741, 1755, 521 F. Supp. 2d 1356, 1370 (2007), aff'd 300 F. App'x 934 (Fed. Cir. 2008) (citation omitted). "Commerce's discretion in setting time limits to comment on draft results of redetermination is broad, as there is no statute or regulation governing its conduct in this situation." Timken Co. v. United States, 179 F. Supp. 3d 1168, 1176 (CIT 2016). When Commerce, however, "provides interested parties an opportunity to comment, as it did here, Commerce's discretion is limited because where a right to be heard exists, due process requires that right be accommodated at a meaningful time and in a meaningful manner." Id. (citation modified) (citation omitted).

The court remanded to Commerce on September 5, 2025, and set a deadline for remand results on December 4, 2025. China Cornici I at 1385. On September 30, 2025, the appropriations act that had been funding Commerce expired, and those appropriations lapsed until Congress appropriated funds for Commerce on November 12, 2025. Def.'s Consent Mot. for an Extension of Time for the Dep't of Commerce to Issue Remand Results at 2, ECF No. 60 (Nov. 28, 2025). As a result of the shutdown, on December 1, 2025, and thereafter again on January 26, 2026, the court granted extensions to file the remand results until May 1, 2026. See Order, ECF No. 61 (Dec. 1, 2025); Order, ECF No. 63 (Jan. 26, 2026). While granting the second extension, the court advised that it did "not expect to grant further extensions if another agency does not complete necessary tasks timely. In such a case Commerce necessarily would be required to weigh the evidence it has." Order at 1, ECF No. 63 (Jan. 26, 2026). On April 22, 2026, Commerce issued

its draft remand results and required comments by 5:00 P.M. Eastern Time on April 24, 2026. Other from USDOC to File Pertaining to Interested Parties Draft Remand Redetermination at 12, CVD C.R.R. 2 (Apr. 22, 2026) ("Draft CVD Remand Results"); Other from USDOC to File Pertaining to Interested Parties Draft Remand Redetermination at 18, AD C.R.R. 2 (Apr. 22, 2026) ("Draft AD Remand Results"). Commerce did not allow Plaintiffs to submit new factual information in response. Draft CVD Remand Results at 12; Draft AD Remand Results at 18. Plaintiffs did not request an extension during this time but submitted an objection on April 29, 2026. See April 29 Objection. Commerce rejected and removed that objection from the administrative remand record. Memo from USDOC to File Pertaining to Interested Parties Rejection of Submission, AD P.R.R. 5 (Apr. 30, 2026). Plaintiffs filed an objection to that removal on April 30, 2026, which Commerce also rejected and removed from the record. April 30 Objection; Rejection Memo from USDOC to File Pertaining to Interested Parties Rejection Objection to Deadline for Cmts, AD P.R.R. 4 (Apr. 30, 2026).

The court will address Plaintiffs' arguments on the merits. Commerce's preparation of the Remand Results was hampered by the 2025 lapse in appropriations. While the agency no doubt endeavored to abide by the court's remand deadline (and other deadlines affected by the lapse in appropriations), the pause in Commerce's operations appears to have created a backlog. Resultantly, even with the extension, Commerce issued its draft results nine calendar days before the May 1, 2026 remand deadline and offered only a two-day turnaround for comments. Draft CVD Remand Results at 12; Draft AD Remand Results at 18. Plaintiffs could—and indeed should—have avoided any risk of waiver by submitting comments in the period allotted. But due process concerns prevent strict application of the exhaustion doctrine on the particular facts of this case given that Commerce analyzed newly submitted record evidence for the first time and gave

Plaintiffs only two days to respond. Thus, the court will reach the merits of Plaintiffs' legal arguments.

Due process does not, however, require remand to Commerce for Commerce to consider the April 29 Objection. The two-day turnaround on the draft comments was brief, but the court has ruled that it will address the merits of Plaintiffs' legal arguments. Moreover, Plaintiffs were aware of the issues on remand and were given an opportunity to submit evidence ahead of the draft remand results. Cf. Timken Co., 179 F. Supp. 3d at 1176–77 (upholding seven-day comment period where respondent knew that court had remanded to Commerce to apply its differential pricing analysis). Specifically, Commerce sent questionnaires to Plaintiffs, through which Plaintiffs were apprised of deficiencies in the previous record and given an opportunity to supplement their submissions.[4] See, e.g., Resp. from Clark Hill PLC to Sec of Commerce Pertaining to RaoPing Supp QR – Narrative, CVD C.R.R. 26 (Jan. 14, 2026); Resp. from Clark Hill PLC to Sec of Commerce Pertaining to RaoPing 2d Supp QR – Narrative, CVD C.R.R. 16 (Mar. 9, 2026); Resp. from Clark Hill PLC to Sec of Commerce Pertaining to China Cornici Supp QR, AD C.R.R. 7 (Mar. 16, 2026) ("China Cornici AD Questionnaire Resp."). Plaintiffs have not explained in particular terms why further remand would lead to a different result. To the extent

[4] The questionnaires sent to Plaintiffs detailed the deficiencies in Plaintiffs' evidence and asked for targeted supplemental evidence or explanation. See, e.g., Resp. from Clark Hill PLC to Sec of Commerce Pertaining to RaoPing Supp QR – Narrative, CVD C.R.R. 26 (Jan. 14, 2026); Resp. from Clark Hill PLC to Sec of Commerce Pertaining to RaoPing 2d Supp QR – Narrative, CVD C.R.R. 16 (Mar. 9, 2026); Resp. from Clark Hill PLC to Sec of Commerce Pertaining to China Cornici Supp QR, AD C.R.R. 7 (Mar. 16, 2026). Thus, the questionnaires issued by Commerce here stand in contrast to that in TNC Kazchrome JSC v. United States, No. 25-00128, 2026 WL 2668862 (CIT Sep. 10, 2026). There, the respondent had informed Commerce that it understood that its parent companies did not need to respond to Commerce's questionnaire, and Commerce failed to notify the respondent that the respondent's understanding was incorrect. Id., at *2. Instead, Commerce stated that it "had identified certain areas of Kazchrome's response that require additional information" but "neither referred to any deficiencies nor—more importantly—stated that the previous response had not complied with instructions." Id. (citation modified).

Plaintiffs seek to submit new factual evidence, any deficiencies in the evidentiary record are a result of Plaintiffs' own inability to furnish an appropriate record either in the underlying review or on remand. See QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("[T]he burden of creating an adequate record lies with [interested parties] and not with Commerce." (citation modified)). Nor will the court grant leave for Plaintiffs to file their April 29 and April 30 objections on the record. As noted above, Plaintiffs failed to request an extension before the deadline set by Commerce and now characterize their objections as "procedural." See Pls. Cmts. at 26. By evaluating Plaintiffs' procedural arguments and by deciding to address Plaintiffs' legal arguments on the merits, the court has addressed any procedural concerns.

## II. Neither Commerce Nor the Court Can Offer Relief for the POR Entries

Plaintiffs argue that Commerce did not comply with the court's remand order in China Cornici I by failing to address how prior disclosures and duty deposits should affect its proceedings. Pls. Cmts. at 15. They take issue with Commerce's determination that it could not order reliquidation of POR entries and argue that Commerce should have identified the precise statutory mechanism and the instructions necessary to implement the court's remand order. See id. at 17. According to Plaintiffs, 19 U.S.C. § 1592 allows restoration of lawful duties irrespective of liquidation finality, such that Commerce should not retain the incorrect duties assessed for those POR entries. Id. at 17.

The government responds that Commerce fully complied with the court's remand order. Gov. Resp. at 17. According to the government, the court remanded to Commerce (1) to reconsider its decision to rescind the administrative reviews as to Plaintiffs, and (2) to consider under what circumstances and how to adjust its proceedings when a party completes prior disclosures and duty deposits to remedy entry paper mistakes—which Commerce did. Id. at 19. The government adds

that Commerce reasonably determined that it could not order Customs to reliquidate the POR entries, noting that the remedy for liquidated entries is contained in 19 U.S.C. § 1514 and that 19 U.S.C. § 1592 does not allow private parties to effectuate reliquidation. Id. at 20–22.

The final liability for antidumping and countervailing duties is determined retrospectively, after importation, and often after a periodic administrative review of the applicable orders. 19 C.F.R. § 351.212(a). This final computation of duties is referred to as "liquidation." Acquisition 362, LLC v. United States, 59 F.4th 1247, 1252 (Fed. Cir. 2023) (citation omitted). To aid this retrospective system, Customs will delay liquidation of entries covered by an antidumping or countervailing duty order until the final duties are calculated. See id. Subject entries of merchandise are "liquidated in accordance with the determination of [Commerce]" "[u]nless such liquidation is enjoined by the court." 19 U.S.C. § 1516a(c)(1). Once an entry has been liquidated, "the duties paid cannot be recovered even if the payor subsequently prevails in its challenge to the antidumping order." Cambridge Lee Indus., Inc. v. United States, 916 F.2d 1578, 1579 (Fed. Cir. 1990) (citing Zenith Radio Corp. v. United States, 710 F.2d 806, 809–10 (Fed. Cir. 1983). Liquidation is generally "final and conclusive upon all persons . . . unless a protest is filed" within 180 days of liquidation pursuant to 19 U.S.C. § 1514(c).[5] 19 U.S.C. § 1514(a). The court may order reliquidation absent a protest in limited circumstances. See Shinyei Corp. of Am. v. United States, 355 F.3d 1297 (Fed. Cir. 2004).

A person who has discovered a material error regarding the documentation for merchandise entering the United States may disclose that error before Customs is made aware of it through a prior disclosure. 19 U.S.C. § 1592(a), (c)(4). If the United States has been deprived of lawful duties, taxes, or fees as a result of a material error, Customs shall require that lawful revenue to be

[5] Only certain decisions of Customs are protestable. See 19 U.S.C. § 1514(a).

repaid, notwithstanding liquidation. 19 U.S.C. §§ 1514, 1592(d).

There are three relevant POR entries at issue, CVD Remand Results at 3 n.14, 10; AD Remand Results at 4: (1) Entry [[ ]], which entered as a Type 01 entry[6] on [[ ]] ( "Entry 1"), China Cornici AD Questionnaire Resp. at 10; (2) Entry [[ ]],[7] which entered as a Type 01 entry on [[ ]] ("Entry 2") (together with Entry 1, the "China Cornici Entries"), id.; and (3) Entry [[ ]], which entered as a Type 03 entry on [[ ]] (the "RaoPing Entry"). See also Resp. from Clark Hill PLC to Sec of Commerce Pertaining to RaoPing 2d Supp QR – Exs. – Part 4, Ex. S2-3 at 1, CVD C.R.R. 12 (Mar. 9, 2026) (showing [[ ]] entry date and [[ ]] entry summary date). But see Data from USDOC to File Pertaining to Interested Parties Attachment – Entry Data at 1, CVD C.R.R. 3 (July 30, 2026) ("RaoPing Entry Datasheet") (showing [[ ]] entry date). All three entries have been liquidated: Entry 1 on [[ ]], China Cornici AD Questionnaire Resp. at 10; Entry 2 on [[ ]], id.; and the RaoPing Entry on [[ ]]. RaoPing Entry Datasheet at 2.

On June 28, 2021, China Cornici's U.S. importer, Larson-Juhl US LLC ("Larson-Juhl"), filed a prior disclosure with Customs, covering all subject entries from [[ ]] through the date of submission. Resp. from Clark Hill PLC to Sec of Commerce Pertaining to China Cornici Supp QR – Exs. Part 1, Ex. 3 at 2, CVD C.R.R. 7 (Mar. 16, 2026) ("Prior Disclosure Part I"). This included the China Cornici Entries but not the RaoPing Entry. Resp. from Clark Hill

---

[6] Type 01 and Type 03 are entry codes used by Customs to categorize goods. Type 01 encompasses goods for general consumption; Type 03 is used to denote goods that are subject to antidumping or countervailing duties. See ACE Transaction Details, U.S. CUSTOMS & BORDER PROT., https://www.cbp.gov/trade/automated/ace-transaction-details.

[7] Commerce determined that this entry is not part of the AD review because it had an entry date outside of the applicable POR. AD Remand Results at 4.

PLC to Sec of Commerce Pertaining to China Cornici Supp QR – Exs. Part 2 at 2, CVD C.R.R. 6 (Mar. 16, 2026) ("Prior Disclosure Part II"). Larson-Juhl informed Customs that it would submit a Post-Summary Correction ("PSC") for these entries that would change the entry Type from 01 to 03. Prior Disclosure Part I at 2. On August 23, 2021, Larson-Juhl perfected its disclosure. Id. at 3. It stated that the manufacturers of the subject entries would request administrative review in February 2022 and thus requested that "the Entry Type Code for all unliquidated entries be reset to Type 03 and that liquidation of the entries be suspended" pending issuance of liquidation instructions. Id. at 4; Prior Disclosure Part II at 1. It further stated that a "protest covering the liquidated entries [would] ask [Customs] to reliquidate the entries at the rate established in the administrative review." Prior Disclosure Part II at 1.

On July 7, 2022, Larson-Juhl filed a protest for entries that were within the 180-day protest window. Resp. from Clark Hill PLC to Sec of Commerce Pertaining to China Cornici Supp QR - Narrative at 4, CVD C.R.R. 8 (Mar. 16, 2026) ("China Cornici CVD Questionnaire Resp."); Resp. from Clark Hill PLC to Sec of Commerce Pertaining to China Cornici Exs. Segment 3 at 2, AD C.R.R. 4 (Mar. 16, 2026) ("July 8, 2022 Correspondence"); Protest 390122127024, Case No. 23-32, ECF No. 10-1 (Apr. 6, 2023) (the "Protest"). This did not include China Cornici Entries that were liquidated more than 180 days prior to July 7, 2022. See Protest. Customs denied Larson-Juhl's Protest on August 15, 2022. Id. That denial is the subject of Larson-Juhl US LLC v. United States, Case No. 23-032. See Summons, Case No. 23-32, ECF No. 1 (Feb. 10, 2023).

As discussed, Commerce rescinded China Cornici's CVD and AD reviews and RaoPing's CVD review because it determined that the parties lacked suspended entries of subject merchandise. See Countervailing Duty IDM at 36–38; Antidumping IDM at 39–40. The court remanded to Commerce to reconsider its rescission determinations and to "consider under what

circumstances and how to adjust its proceedings when prior disclosures and deposits of duties are made in an attempt to remedy mistakes on entry papers, addressing all the statutes at play." China Cornici I at 1383.

On remand, Commerce solicited further information from Plaintiffs and Customs regarding China Cornici and RaoPing's POR entries and communicated with Customs regarding Customs' processes with respect to mislabeled entries. CVD Remand Results at 5; AD Remand Results at 2. Customs explained that an importer has three options to correct an error in its entry documentation. CVD Remand Results at 5–6; AD Remand Results at 6–7. First, the importer may file a PSC if the entry has not yet liquidated and may change the entry type from Type 01 to Type 03 and add the relevant AD/CVD information; second, if the entry has already liquidated, the importer may file a protest with Customs;[8] and third, the importer may file a prior disclosure at any time before Customs discovers the error, which guards against the risk of penalty but does not otherwise change the liquidation status or entry type of the merchandise. CVD Remand Results at 5–6; AD Remand Results at 6–7.

Commerce found that, although China Cornici had mislabeled entry paperwork, it had taken steps to remedy its mistake by filing a prior disclosure. CVD Remand Results at 7; AD Remand Results at 8. Accordingly, it determined not to rescind its reviews with respect to China Cornici and to assign China Cornici the non-examined companies' rate in the CVD review and the China-wide entity rate in the AD review. CVD Remand Results at 7–8; AD Remand Results at 8, 13. Commerce, however, determined that it could not issue assessment instructions to Customs for the POR entries because those entries had already liquidated. CVD Remand Results at 8; AD Remand Results at 13. Likewise, Commerce determined not to rescind its CVD review of

---

[8] The court does not determine here what relief may be available as a result of such protest.

RaoPing, finding that RaoPing was the manufacturer of a Type 03 entry during the POR. CVD Remand Results at 11. Commerce assigned RaoPing the non-examined companies' rate but did not issue assessment instructions for the RaoPing Entry because it had already been liquidated. Id.

Commerce reasonably determined not to rescind its reviews of China Cornici and RaoPing, given that record evidence shows both companies had subject entries during the POR. Commerce also reasonably determined that it could not order reliquidation for the POR entries because those entries had already been liquidated. As an initial matter, Commerce is correct that it cannot order Customs to reliquidate entries in this case. Here, the record shows that each of the POR entries has liquidated.[9] China Cornici AD Questionnaire Resp. at 10; RaoPing Entry Datasheet at 2. Once an entry has liquidated, Customs' ability to reliquidate is limited. Within a 90-day period, it may voluntarily reliquidate entries. 19 U.S.C. § 1501; 19 C.F.R. § 173.3. Beyond that 90-day period, it may reliquidate entries where a party has filed a valid protest, 19 U.S.C. § 1514; 19 C.F.R. § 173.2(d), where a party has paid excess duties on qualifying goods under certain free trade agreements, 19 U.S.C. § 1520(d), and following an order from this court. 19 C.F.R. § 176.31(a). None of those circumstances are at play here: The 90-day period for voluntary reliquidation has passed, Plaintiffs did not timely protest liquidation, the subject entries are not subject to any applicable free trade agreement, and, at the time of the Remand Results, the court had not ordered reliquidation.

Plaintiffs attempt to bypass the liquidation hurdle by reading into section 1592(d) a

---

[9] Plaintiffs characterize the issue on remand as "whether entries of subject merchandise existed, whether duties were tendered in connection with those entries, and how Commerce must determine lawful duties where the importer attempted to remedy entry-paper errors through Section 1592 prior disclosure." Pls. Cmts. at 15. That characterization may describe the underlying determination of whether to rescind the administrative reviews. But whether Commerce, having made that determination, can order Customs to reliquidate entries at different rates is a separate issue.

reliquidation authorization. The plain language of that statute, however, forecloses Plaintiffs' argument. Subsection 1592(d) allows "lawful duties, taxes, and fees [to] be restored" "if the United States has been deprived" of such revenue on account of negligent or intentional misrepresentation—the finality of section 1514 notwithstanding. See 19 U.S.C. §1592(a), (d). As the court noted in China Cornici I, "this provision appears to operate as an exception to the [section 1514] default rule that liquidation is final and conclusive upon all persons outside of a protest." China Cornici I at 1382 n.8 (citation modified) (citation omitted). But the exception is a precise one: It requires an antecedent trigger, namely that the United States be deprived of lawful duties, taxes, or fees, and allows only the "restor[ation]" "of [those] lawful duties, taxes, or fees." 19 U.S.C. § 1592(d) (emphases added). Given that the United States was not deprived of lawful revenue when the POR entries were liquidated, and that reliquidation here would not "restore" to the government lost revenue, Commerce reasonably determined that it could not order Customs to reliquidate the POR entries pursuant to section 1592(d).

Nor have the Plaintiffs asserted a jurisdictional basis that would allow the court to order reliquidation. It is well settled that "in the context of judicial review under 19 U.S.C. § 1516a, 'once liquidation occurs the trial court is powerless to order the assessment of duties at any different rate.'" Kaptan Demir Celik Endustrisi Ve Ticaret A.S. v. United States, No. 24-00018, 2024 WL 3717055, at *1 (CIT Aug. 8, 2024) (quoting SKF USA, Inc. v. United States, 512 F.3d 1326, 1328–29 (Fed. Cir. 2008)). It is perhaps conceivable that Plaintiffs could avail themselves of the court's jurisdiction under 28 U.S.C. § 1581(i) and request relief pursuant to Shinyei Corp.,[10]

[10] In Shinyei Corp., the Federal Circuit considered a challenge to Commerce's liquidation instructions issued after litigation regarding an administrative review of the antidumping duty order. See 355 F.3d at 1299–304. The court held that the CIT retained jurisdiction pursuant to 28 U.S.C. § 1581(i) over the challenge to Commerce's liquidation instructions notwithstanding Customs' liquidation of the subject entries and further determined that "the provisions of section

but Plaintiffs have neither moved to amend their complaint nor provided a factual basis for section 1581(i) jurisdiction.

Thus, the court sustains the CVD Remand Results, as well as Commerce's determination not to rescind the administrative review with respect to China Cornici, in the AD Remand Results.

### III. Commerce Reasonably Determined Not to Assign China Cornici a Separate Rate in its AD review

Plaintiffs argue that Commerce improperly collapsed its multifactor de facto independence inquiry into a single evidentiary demand when determining whether to assign China Cornici a separate rate.[11] Pls. Cmts. at 18–19. According to Plaintiffs, Commerce did not properly weigh record evidence in its determination. Id. at 19–20. They maintain that Commerce's focus on the lack of pre-sale negotiation emails was improper, given that a company may set export prices independently even without evidence of pre-sale negotiations. Id. at 20. Plaintiffs also argue that

---

1514 . . . cannot be read to preclude reliquidation in this case." Id. at 1304–05, 12. Shinyei relief has only been made available in limited circumstances. See, e.g., In re Section 301 Cases, 524 F. Supp. 3d 1355, 1364–66 (CIT 2021) (collecting cases).
The court makes no findings as to whether the court would have jurisdiction under section 1581(i), or whether Shinyei relief would otherwise be available. It notes, however, that Plaintiffs failed to remedy the assertedly incorrect liquidation of each POR entry at issue. With respect to Entry 1, Larson-Juhl did not notify Customs of its entry filing error until after it had been liquidated [[ ]] and therefore foreclosed its ability to file a PSC that would have changed the entry from Type 01 to Type 03 and ensured suspension. See Prior Disclosure Part I. With respect to Entry 2, the PSC option was available, but Larson-Juhl did not pursue it. Prior Disclosure Part I; Prior Disclosure Part II. While in its prior disclosure perfection Larson-Juhl requested that Customs suspend the liquidation of the China Cornici Entries—and suggested that it would file a protest—it did not timely protest either liquidation. See Prior Disclosure Part II; China Cornici CVD Questionnaire Resp. at 4. With respect to the RaoPing Entry, nothing in the record suggests that any action was taken to prevent liquidation [[ ]]. The court is sympathetic to Plaintiffs' inability to secure relief for the POR duties in the present action but underscores that their present predicament is a result of repeated inattentiveness.

[11] Plaintiffs also suggest that the evidence supporting Commerce's determination that China Cornici was de jure independent supports a determination that it was de facto independent. Pls. Cmts. at 18–19. The two inquiries are, however, separate. See Dongtai Peak Honey Indus. Co. v. United States, 777 F.3d 1343, 1350 (Fed. Cir. 2015) (citation omitted).

Commerce did not give China Cornici a fair chance to submit an unaffiliated customer affidavit to support its independent price-setting. Id. at 20–21.

The government counters that Commerce, on the separate rate application ("SRA"), indicated that applicants must provide evidence that the applicant conducts independent price negotiations, and that China Cornici affirmatively represented that it was submitting negotiation emails as its price negotiation evidence. Def. Cmts. at 24–25. The government emphasizes that China Cornici did not cure its evidentiary deficiencies even after Commerce issued a supplemental questionnaire on remand requesting additional information. Id. at 25. Next, the government argues that Commerce's determination was adequately supported by the record evidence, even if China Cornici's view of the evidence is that it supports de facto independence. Id. at 27. Finally, the government takes issue with China Cornici's argument that it was not given adequate opportunity to provide an affidavit, arguing that the SRA informed the company that it could have provided such an affidavit. Id. at 28.

Commerce considers some countries, such as China, "nonmarket economies" where the state distorts domestic commercial markets. See Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States, 145 F.4th 1308, 1310 (Fed. Cir. 2025). As a result, Commerce generally applies country-wide antidumping rates to all entities located in a nonmarket economy. Id. at 1311–12. "Respondents may rebut this presumption and become eligible for a separate rate by establishing the absence of both de jure and de facto government control." Dongtai Peak Honey Indus. Co. v. United States, 777 F.3d 1343, 1350 (Fed. Cir. 2015) (citing Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997)) (citation modified). Entities seeking this separate antidumping rate are required to submit an SRA during the relevant administrative review. See 19 C.F.R. § 351.108(d)(2). Commerce considers three factors when determining whether an exporter enjoys

independence from de jure government control.[12] Pirelli Tyre Co. v. United States, 638 F. Supp. 3d 1361, 1372 (CIT 2023), aff'd, 128 F.4th 1265 (Fed. Cir. 2025).

Commerce considers four factors in determining whether an exporter is free of de facto government control:

> (1) whether the export prices are set by or are subject to the approval of a government authority; (2) whether the respondent has authority to negotiate and sign contracts and other agreements; (3) whether the respondent has autonomy from the government in making decisions regarding the selection of management; and (4) whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses.

Id. Commerce considers these four factors to be conjunctive, and decisions from this court have sustained the conjunctive approach. See, e.g., Yantai CMC Bearing Co. v. United States, 203 F. Supp. 3d 1317, 1326 (CIT 2017).

On May 16, 2022, China Cornici submitted an SRA in the underlying administrative review. Resp. from Clark Hill PLC to Sec of Commerce Pertaining to China Cornici Separate Rate Application – Narr to Ex 5, AD P.R. 98, C.R. 55 (May 16, 2022) ("China Cornici SRA"). In Section IV of its application, China Cornici submitted answers and supporting exhibits to demonstrate the lack of de facto control, including beneficial ownership information, price negotiation documentation, management selection, profit disposition, and affiliation. Id. at 11–20. With respect to price negotiation, the SRA instructions stated that China Cornici "must provide documentation supporting its certification that the applicant conducts independent price negotiation," including faxes or e-mail correspondence between the applicant and an unaffiliated

[12] These are: "(1) an absence of restrictive stipulations associated with an individual exporter's business and export licenses; (2) any legislative enactments decentralizing control of companies; and (3) any other formal measures by the government decentralizing control of companies." Pirelli Tyre Co. v. United States, 638 F. Supp. 3d 1361, 1372 (CIT 2023), aff'd, 128 F.4th 1265 (Fed. Cir. 2025).

U.S. customer, purchase orders from unaffiliated U.S. customers, order confirmations, or logs of telephone negotiations with an unaffiliated U.S. customer. Id. at 15–16. The instructions explained to China Cornici that "if you do not have documentation to support your certification . . . you may submit an affidavit as an alternative." Id. at 16.[13] China Cornici attached a price list and "negotiation emails" between China Cornici and an unaffiliated U.S. customer relating to a price error in a sales invoice. Id.; id., Ex. 13.

In the AD Final Results, Commerce rescinded the AD review with respect to China Cornici, so it did not reach the merits of China Cornici's SRA. Antidumping IDM at 39–40; AD Remand Results at 8. Following this court's decision in China Cornici I, Commerce reopened the record and requested supplemental information from China Cornici. AD Remand Results at 11–12. Specifically, Commerce requested that China Cornici provide the email correspondence supporting the price and quantity negotiation for the sales transaction noted in its SRA. See China Cornici AD Questionnaire Resp. at 16. It further stated that China Cornici could provide "email correspondence related to any sale of subject merchandise after the first U.S. sale during the POR" if it did not have the specific information Commerce sought. Id. In response, China Cornici stated that it had "not located additional pre-sale emails memorializing the original price and quantity negotiation" but provided additional email evidence cataloguing an email interaction regarding an invoicing discrepancy. Id. at 17.

On remand, in conducting its AD review (already upheld above), Commerce considered

[13] See also China Cornici SRA at 15 n.18 ("Applicants must provide documents showing price negotiation, not documents merely confirming that a sale will take place at a given price. If your firm . . . has no records of price negotiation, you are required to attach . . . an affidavit signed and dated [by] the unaffiliated U.S. customer attesting that it conducts independent price negotiation with the applying firm. Affidavits must provide adequate information to link the applicant to the party signing the affidavit.").

whether to assign China Cornici a separate rate. AD Remand Results at 8. Commerce determined that, although the company had sufficiently demonstrated de jure independence,[14] it had failed to provide sufficient evidence regarding de facto independence. Id. at 11. Specifically, Commerce found that China Cornici had not shown that it set its own export prices independently of the government. Id. at 11–12. It reasoned that China Cornici's submitted evidence consisted only of a price list and emails pertaining to an invoicing error, which did not show independent price negotiation. Id. at 12. It further reasoned that Commerce could have produced an affidavit, as noted in the SRA, but failed to do so. Id.

Commerce's determination not to assign China Cornici a separate rate was reasonable. Commerce may reasonably require a separate rate applicant to satisfy all four de facto independence factors. See, e.g., Pirelli Tyre, 638 F. Supp. 3d at 1373 ("All four factors of the de facto test must be satisfied to rebut the presumption of government control."). On the basis of China Cornici's submitted evidence, Commerce reasonably determined that China Cornici did not show independent price negotiation, and thus reasonably declined to assign it a separate rate.[15] See Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States, 350 F. Supp. 3d 1308, 1321 (CIT 2018) ("Because Plaintiffs failed to satisfy one de facto criterion, Commerce had no further obligation to continue with the [separate rate] analysis." (citation modified) (citation omitted)). China Cornici's submitted evidence consists of a contextless list of export prices for various items

---

[14] Plaintiffs, of course, do not challenge Commerce's determination as to de jure independence, and the court finds it reasonable.

[15] While China Cornici argues that Commerce improperly weighed the lack of price negotiation emails against the other assembled evidence, it nowhere explains what record evidence might support price negotiation. Irrespective, that two or more possible conclusions can be drawn from the record evidence does not mean that Commerce's determination was unreasonable. Mitsubishi Heavy Indus., Ltd. v. United States, 275 F.3d 1056, 1062 (Fed. Cir. 2001) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (citation omitted)).

and an email chain regarding an invoicing error. See China Cornici SRA at 16; Resp. from Clark Hill PLC to Sec of Commerce Pertaining to China Cornici Separate Rate Application – Ex. 6 to Ex. 15, Exs. 8, 13, AD C.R. 58 (May 16, 2022) ("China Cornici SRA Exs."); China Cornici AD Questionnaire Resp. at 16–17. Missing from the price list is any explanation as to how those prices are set and whether they are indeed negotiated independently. China Cornici SRA Exs., Ex. 8. Moreover, the email exchange shows that China Cornici corrected an invoicing error and establishes nothing beyond the fact that the company may cure clerical mistakes. China Cornici SRA Exs., Ex. 13; Resp. from Clark Hill PLC to Sec of Commerce Pertaining to China Cornici Exs. Segment 4, Ex. 6, AD C.R.R. 3 (Mar. 16, 2026). Nor do China Cornici's narrative explanations provide any further detail. See China Cornici AD Questionnaire Resp. at 17 (explaining that the email exchange "demonstrates that China Cornici communicated directly with its unaffiliated U.S. customer regarding price and revised the commercial terms in the ordinary course, without any government involvement").[16]

[16] The court also disagrees with China Cornici that it was not given a meaningful opportunity to cure its deficient SRA with an affidavit. See Pls. Cmts. at 20–21. As an initial matter, the court has stated that Commerce "need not inform the parties of deficiencies in submissions, unless those submissions are responses to requests for information." Sao Ta Foods Joint Stock Co. v. United States, 475 F. Supp. 3d 1283, 1291 n.15 (CIT 2020) (noting that "[s]ection 1677m(d) requires Commerce to notify a respondent of a deficient response to a request for information," but that, "[b]y contrast, a company submits a separate rate application voluntarily so to rebut a presumption of governmental control and avoid an NME-wide rate." (citation modified) (citation omitted)). But the voluntary versus involuntary distinction may have lost its usefulness, particularly in nonmarket economy cases. SRAs are routine and are required if a company is to escape onerous China-wide entity rates. What Commerce will consider is set forth in the SRA instructions. A better approach may be to assess whether adequate notice of what is required has been given. See case comparison in note 4, supra.

In any case, there is a difference between apprising a party of a deficient response and coaching it. Here, the SRA instructions clearly advised China Cornici that it could submit multiple categories of evidence to support its independent price negotiation certification—including an affidavit if it did not have other evidence. China Cornici SRA at 15–16. China Cornici chose to rely exclusively on negotiation emails, see id. at 16, and Commerce sufficiently explained why China Cornici's chosen email evidence was deficient and gave it an opportunity to provide additional email

Thus, the court sustains Commerce's determination not to assign a separate rate to China Cornici.

## IV. The Court Sustains Commerce's Determination as to Chen Chiu for the Entry at Issue

Plaintiffs argue that Commerce improperly refused to apply RaoPing's separate rate to Chen Chiu entries. Pls. Cmts. at 25. They argue that, under Commerce's regulations, Commerce will normally apply the current separate cash-deposit rate applicable to a non-market-economy reseller's entries of subject merchandise. Id. at 23 (citing 19 C.F.R. § 351.107(d)(1)(ii)(C)). According to Plaintiffs, Commerce here departed from that rule without identifying a lawful exception. Id. Plaintiffs maintain that applying RaoPing's rate to entries proven to involve RaoPing-produced merchandise would not allow Chen Chiu to resell merchandise from any supplier at that rate. Id. Plaintiffs next argue that Commerce's requirement that RaoPing be identified on the entry summary condition is extra-regulatory. Id. at 24–25. They point out that third-country reseller structures routinely involve commercial documents identifying the reseller as seller/exporter to the U.S. customer while the nonmarket economy producer/exporter supplies the goods. Id. at 25. They ask the court to remand with instructions that Commerce apply RaoPing's separate antidumping rate to entries tied to RaoPing-produced merchandise. Id.

The government counters that Commerce's determination is consistent with its regulations. Gov. Resp. at 29. It emphasizes that Commerce has a duty to avoid the evasion of antidumping duties, and that Commerce's determination recognizes the importance of identifying the exporter and its relationship with the third-country reseller. Id. at 29–30. The government

---

evidence and did not prohibit other evidence. China Cornici AD Questionnaire Resp. at 16. That is sufficient for purposes of section 1677m(d); to hold otherwise would impermissibly shift the respondent's burden to create the supporting record to Commerce.

adds that, insofar as Plaintiffs take issue with Commerce's determination for the particular entry during the POR, that argument fails because Commerce cannot order customs to reliquidate entries. Id. at 30.

If an entity with a separate antidumping rate in a nonmarket economy sells goods through a third-country reseller, Commerce "will normally instruct U.S. Customs and Border Protection to apply the current separate cash deposit rate applicable to the nonmarket economy country exporter . . . that supplied the subject merchandise to the reseller to those entries of the subject merchandise." 19 C.F.R. § 351.107(d)(1)(ii)(C).

In the underlying review, RaoPing requested that Commerce apply its separate rate to entries from Chen Chiu. Antidumping IDM at 35. Commerce refused because it determined that Chen Chiu was not reviewed under the same antidumping administrative review and therefore did not submit its own application for a separate rate. Id. at 36–37. In China Cornici I, the court remanded to Commerce to reconsider whether to assign Chen Chiu a separate rate. China Cornici I at 1384–85. The court found that Commerce had not applied its regulation, which states that the agency would normally apply RaoPing's separate rate to a reseller like Chen Chiu. Id. at 1384 (citing 19 C.F.R. § 351.107(d)(1)(ii)(C)). The court drew issue with Commerce's incorrect demand that Chen Chiu submit a separate rate application. Id. It further drew issue with Commerce's unexplained denial of RaoPing's rate in spite of the overwhelming evidence (and even its concession) that RaoPing was the source for Chen Chiu's goods. Id. The court instructed Commerce that "[i]f some required step was missing for the entries at issue to be assigned RaoPing's rate[,] Commerce shall spell it out clearly." Id.

On remand, Commerce identified the step and determined that "the importer must have identified RaoPing as the Chinese exporter of the subject merchandise when filing its entry

summary with [Customs]" for it to have been assigned RaoPing's rate.[17] AD Remand Results at 14–15. Commerce explained that, had "the importer identified RaoPing as the exporter of the goods, the entry would have continued to be suspended until the final results of the administrative review," after which Commerce would instruct Customs to liquidate the entries exported by RaoPing at the separate rate. Id. at 15. It further explained that, for "Chen Chiu's future shipments of subject merchandise exported by RaoPing, the importer may claim RaoPing's separate cash deposit rate," but may not do so where RaoPing is not the exporter of the subject merchandise. Id.

The court does not reach the issue of what entry documentation may reasonably be required because the one POR entry at issue identified by the parties, the RaoPing Entry (i.e., Entry [[ ]]), has been liquidated. See RaoPing Entry Datasheet. Nothing in the record suggests that Plaintiffs protested that liquidation, assuming that that would be an appropriate remedy.[18] Thus, whether or not the entry summary should have more clearly identified RaoPing as the manufacturer, Plaintiffs failed to have liquidation of the entry suspended or enjoined in a way that would facilitate the court's review here. See Kaptan Demir, 2024 WL 3717055, at *1. The court notes, however, that the connection to the appropriate exporter on the relevant entry documentation must be clear to avoid the type of problems that arose here. Because future Chen Chiu entries outside the POR are not before the court, the court will not issue an advisory opinion as to what

[17] On remand, Commerce also determined that, "for Chen Chiu to be eligible for its own separate rate, a review should have been requested of Chen Chiu and it should have submitted its own separate rate application in order to obtain its own separate rate in this administrative review." AD Remand Results at 14. Commerce has still not explained how Chen Chiu, as a Taiwan-based company, could submit an SRA. See China Cornici I at 1384 n.10. This determination, however, has no bearing on whether and on what basis Chen Chiu, as a reseller, may be assigned RaoPing's rate.

[18] It appears from the underlying record that the RaoPing Entry was liquidated pursuant to Commerce's automatic liquidation instructions because "the non-examined company under review [did] not [appear] in the [Customs] entry documentation." See Countervailing Duty IDM at 36.

entry documentation may be required of resellers. Thus, the court sustains Commerce's determination as to RaoPing insofar as it relates to the Chen Chiu entry at issue.

## CONCLUSION

For the foregoing reasons, the court sustains Commerce's Final Results of Redetermination Pursuant to Court Remand, Court No. 23-216, ECF No. 66-1 (May 1, 2026), and Final Results of Redetermination Pursuant to Court Remand, Court No. 23-217, ECF No. 59-1 (May 1, 2026). Judgment will enter accordingly.

/s/ Jane A. Restani
Jane A. Restani, Judge

Dated: September 23, 2026
New York, New York